# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 06-cv-22942-GRAHAM

|  |  |
|---|---|
| TRACFONE WIRELESS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JAMES H. BILLINGTON, Librarian of Congress, and | ) |
| MARYBETH PETERS, Register of Copyrights, | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

The Digital Millennium Copyright Act (DMCA) contains a provision that prohibits circumvention of technological measures that control access to copyrighted works. 17 U.S.C. § 1201(a)(1). This provision is subject to an exemption that applies to noninfringing uses of particular classes of copyrighted works when the Librarian of Congress determines in rulemaking that the prohibition, when applied to those classes of works, adversely affects or is likely to adversely affect noninfringing uses. Id. The Librarian of Congress has promulgated an exemption through this rulemaking process specifying that the prohibition will not apply to "Computer programs . . . that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless communication network." Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 71 Fed. Reg.

68,472, 68,480 (Nov. 27, 2006) (to be codified at 37 C.F.R. § 201.40(b)(5)).

Plaintiff TracFone, a private company that sells wireless communications handsets and services, has filed suit against the Librarian of Congress and the Register of Copyrights. TracFone seeks an order declaring the exemption null and void, preventing the defendants from implementing the exemption, and ordering the defendants to repeal the exemption. TracFone alleges that in promulgating the exemption, the defendants violated the Copyright Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. TracFone further alleges that the DMCA's grant of rulemaking authority to the Librarian of Congress violates the constitutional separation of powers.

TracFone has no genuine grievance against the defendants; its suit is simply an attempt to bypass the legislative and regulatory process to safeguard TracFone's future business interests. Because TracFone has no present grievance appropriate for judicial resolution, TracFone lacks standing, and its complaint should be dismissed for lack of subject matter jurisdiction. TracFone fails to meet the requirement of stating an injury in fact, because the harms that TracFone believes may ensue from the challenged exemption are speculative and remote, and they do not implicate any interests cognizable in the courts. TracFone also fails to establish that the potential harm it envisions would be fairly traceable to the defendants' actions, as opposed to the actions of third parties. Finally, TracFone's concerns cannot be redressed by judicial action; all the forms of relief TracFone requests either would be advisory in nature or would exceed the Court's authority to direct an agency to perform specific regulatory action.

TracFone's lack of standing by itself requires the Court to dismiss this action. In addition, however, TracFone fails to state a claim for which relief can be granted. The Administrative Procedure Act does not authorize judicial review of actions taken by the Librarian of Congress

or recommendations made by the Register of Copyrights in the § 1201(a)(1) rulemaking process. TracFone also has no claim under the DMCA, because the rulemaking fully satisfied the procedural and substantive requirements of the statute. Due process does not require an agency to afford individualized advance notice to the public before establishing generally applicable rules. Finally, the DMCA's grant of rulemaking authority does not violate the constitutional separation of powers, because the Librarian of Congress and the Register of Copyrights are appointed in a manner consistent with the Appointments Clause, and the Library of Congress performs its rulemaking functions as an independent agency, not as an agent of Congress subject to the direct control of Congress or its members.

In the alternative, the Court should grant summary judgment in favor of the defendants because the plaintiff's claims have no legal basis and there is no genuine issue of material fact for trial. Although the defendants are entitled to dismissal based on the inadequacy of the complaint alone, the defendants have attached a certified administrative record in the event that the Court decides to inquire into the basis for the Librarian's decision and convert the defendants' motion to a motion for summary judgment pursuant to Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The rapid development of digital media and communications in recent decades has created many new channels for sale and distribution of copyrighted works, but it has also opened new avenues for copyright infringement. To respond to the threat of digital copyright infringement, the World Intellectual Property Organization developed two multilateral treaties that, among other things, require parties to enact legal protections against circumvention of technological measures that copyright owners employ to protect their works. WIPO Copyright

Treaty (WCT), art. 11, Dec. 20, 1996, S. Treaty Doc. 105-17, 36 I.L.M. 65; WIPO Performances

and Phonograms Treaty (WPPT), art. 18, Dec. 20, 1996, S. Treaty Doc. 105-17, 36 I.L.M. 76.

The United States ratified both treaties, and Congress passed the Digital Millennium Copyright

Act, Pub. L. No. 105-304, 112 Stat. 2680 (1998) (codified as amended in scattered sections of 5,

17, 28, and 35 U.S.C.), to implement the treaties and otherwise update the copyright law to

reflect modern conditions. See H.R. Rep. No. 105-796, at 63 (1998) (Conf. Rep.). Among other

things, the DMCA amended Title 17 of the U.S. Code to prohibit circumvention of "a

technological measure that effectively controls access to a work" protected under the copyright

law. 17 U.S.C. § 1201(a)(1)(A). The Act specified, however, that the prohibition does not apply

to users of a class of copyrighted works who "are, or are likely to be . . . adversely affected" by

the prohibition "in their ability to make noninfringing uses of that particular class of works" as

determined by the Librarian of Congress[1] in a rulemaking conducted every three years. Id.

§ 1201(a)(1)(B). Under the statute, the Librarian promulgates exemptions on the

recommendation of the Register of Copyrights,[2] who is to consult with the Assistant Secretary

for Communications and Information of the Department of Commerce and report and comment

on her views in making her recommendation. The statute instructs the Librarian to consider four

enumerated factors[3] as well as "such other factors as [he] considers appropriate." Id.

---

[1]The Librarian of Congress makes rules and regulations governing the Library of Congress and supervises the functions of the Register of Copyrights and the Copyright Office. 2 U.S.C. § 136; 17 U.S.C. § 701(a). He is appointed by the President with the advice and consent of the Senate. 2 U.S.C. § 136.

[2]The Register of Copyrights is responsible for all administrative functions and duties under Title 17 of the U.S. Code. 17 U.S.C. § 701. She is appointed by the Librarian of Congress and acts under his general direction and supervision. Id. § 701(a).

[3]These factors are:
(i) the availability for use of copyrighted works;

4

§ 1201(a)(1)(C).

On October 3, 2005, the Copyright Office published a notice of inquiry announcing the initiation of the third § 1201(a)(1) rulemaking.[4] Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 70 Fed. Reg. 57,526 (Oct. 3, 2005). The notice established a 30-day initial comment period in which commenters could propose classes of works to be exempted from the anticircumvention provision, to be followed one month later by a 30-day reply comment period in which commenters could oppose, support, or suggest modifications to the exemptions proposed in the initial comment period. Id. at 57,530–31. Comments would be posted on the Copyright Office Web site. Id. at 57,530. The Copyright Office would then hold hearings on the proposed exemptions in the spring of 2006. Id. at 57,531. Finally, the notice announced that to allow for "unforeseen developments . . . that would significantly affect the Register's recommendation," the Copyright Office would accept

---

(ii) the availability for use of works for nonprofit archival, preservation, and educational purposes;
(iii) the impact that the prohibition on the circumvention of technological measures applied to copyrighted works has on criticism, comment, news reporting, teaching, scholarship, or research;
(iv) the effect of circumvention of technological measures on the market for or value of copyrighted works; . . .
17 U.S.C. § 1201(a)(1)(C)(i)–(iv).
The purpose of the § 1201(a)(1) exemption provision was to temper the rights afforded by the anticircumvention provision to "maintain balance between the interests of content creators and information users" in accordance with traditional principles of fair use. See H.R. Rep. No. 105-551, pt. 2, at 26, 37–38 (1998).

[4]The first round of § 1201(a)(1) rulemaking, completed October 27, 2000, identified two classes of works to be exempted from the provision for the following three years. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 65 Fed. Reg. 64,555 (Oct. 27, 2000). The second § 1201(a)(1) rulemaking, completed October 28, 2003, created exemptions for four classes of works. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 68 Fed. Reg. 62,011 (Oct. 31, 2003).

petitions for consideration of comments submitted after the stated deadlines. <u>Id.</u> The notice

stated, "The Register will make a determination whether to accept such a petition based on the

stage of the rulemaking process at which the request is made and the merits of the petition." <u>Id.</u>

During the initial comment period, the Copyright Office received a submission from

Jonathan R. Newman and Robert Pinkerton. The submission identified Newman as vice

president of The Wireless Alliance, LLC, a corporation that recycles and resells used,

refurbished, and new cellular products; it identified Pinkerton as a frequent traveler who desired

to unlock his mobile phone for use overseas. The submission proposed an exemption for

"Computer programs that operate wireless telecommunications handsets. (Mobile firmware)."[5]

The commenters' summary of their argument in favor of the exemption stated:

> Mobile communications providers are using software locks to control customer
> access to mobile phone operating software embedded inside the devices. These
> locks prevent customers from using their handsets on a competitor's network.
> Customers who want to use their handsets on a different network must circumvent
> the locking software to access the computer program that allows the phone to
> operate (mobile firmware). Mobile providers can use section 1201(a) to stop
> customers from selecting a provider of their choice, resulting in poorer service
> and higher costs for customers, reduced competition contrary to explicit U.S.
> policy, and environmental disaster as a result of mobile handset waste. Locked
> phones also contribute to the problem of the digital divide between rich and
> poorer nations.

Comments of Jonathan R. Newman and Robert Pinkerton at 3.

The Copyright Office received fourteen reply comments in support of this exemption and

one reply comment opposing the exemption. Compl. Ex. D at 42 & n.123. Most of the reply

comments in favor of the exemption were submitted by individuals who had encountered

difficulties traveling overseas or changing wireless communications providers because their

---

[5]Comments of Jonathan R. Newman and Robert Pinkerton at 2,
http://www.copyright.gov/1201/2006/comments/granick_wirelessalliance.pdf.

telephones were locked. The Wireless Alliance and Pinkerton also submitted a reply comment

describing a lawsuit TracFone filed against Sol Wireless, which the comment identified as a

small Miami phone reseller. The single reply comment opposing the exemption was submitted

jointly by fourteen organizations representing copyright owners and creators. Compl. Ex. D at 25

n.69, 42, 52. TracFone did not submit a reply comment during the reply comment period.

On February 23, 2006, the Copyright Office posted a notice in the Federal Register

stating that it would conduct hearings on the proposed exemptions in Palo Alto, California, on

March 23 and 24, 2006, and in Washington, D.C., on March 29, March 31, April 3, and April 4,

2006. Notice of Public Hearings: Exemption to Prohibition on Circumvention of Copyright

Protection Systems for Access Control Technologies, 71 Fed. Reg. 9302, 9302 (Feb. 23, 2006).

The notice indicated that the proposed exemptions and reply comments were available on the

Copyright Office Web site and specified procedures for submitting a request to testify. Id.

TracFone did not submit a request to testify at the hearing.

At the March 23, 2006, hearing, two witnesses testified on the Wireless Alliance-

Pinkerton proposal: Jennifer Granick, an attorney representing the proponents of the exemption,

and Steven Metalitz, an attorney representing the organizations who had submitted a reply

comment opposing the exemption. Compl. Ex. A at 1. At the hearing, in response to concerns

raised by Mr. Metalitz about the need to protect forms of copyrighted content that might be

stored on a phone, such as audio or video files or games, Copyright Office General Counsel

David O. Carson suggested the scope of the proposed exemption could be narrowed to

"Computer programs in the form of firmware that enable wireless telecommunications[] handsets

to connect to a wireless communication network." Compl. Ex. A at 45. Some of the discussion at

the hearing specifically referred to TracFone and its business model. Compl. Ex. A at 54–55, 80.

After the hearing, on August 14, 2006, Mr. Carson sent a letter requesting additional information from the two witnesses who testified at the hearing. Compl. Ex. B. The two witnesses responded in writing on September 11, 2006, and on that date the Copyright Office also received two unsolicited communications: one from CTIA—The Wireless Association, a nonprofit trade group that promotes the interests of the wireless communications industry, and one from TracFone. Compl. Ex. D at 42–43.

The TracFone submission included both a petition for consideration of late reply comments and a proposed submission presenting arguments against adoption of the proposed exemption. Compl. Ex. C. TracFone presented three reasons why the Copyright Office should accept its late-submitted comments: that TracFone had only recently learned of the proposed exemption in its current form, that the proposed exemption had been narrowed after the public hearing, and that the proposed exemption would have an adverse impact on TracFone's business model. Compl. Ex. C at 3–4. The submission went on to present TracFone's arguments in opposition to the exemption. Compl. Ex. C at 5–14.

On November 17, 2006, Register of Copyrights Marybeth Peters delivered her recommendation to the Librarian of Congress. Compl. Ex. D. After discussing the rulemaking process and TracFone's petition in particular, the Register recommended that the Librarian deny TracFone's petition for late consideration of its objections. Compl. Ex. D at 48. The Register concluded that TracFone's statement that it had not been aware of the proposed exemption "in its current form" suggested TracFone may have been aware of the original, more broadly worded proposal, and therefore of the substance of the proposal, earlier. Compl. Ex. D at 45. The Register also noted that CTIA, a trade association of which TracFone was a member, had been aware of the proposal at least as early as February 2006. Compl. Ex. D at 45. In any event, the

Register noted, even if TracFone was completely unaware of the proposal, lack of awareness was not an adequate excuse for submitting late comments. Compl. Ex. D at 45. The Register noted that considering the late submission would delay the decisionmaking process and would be unfair to parties who had made timely submissions. Compl. Ex. D at 46–48. The Register noted that the Assistant Secretary of Commerce for Communications and Information had encouraged the Register to consider TracFone's late submission, but the Register ultimately concluded that TracFone's comments would not be considered. Compl. Ex. D at 47–48. The Register went on to recommend that the Librarian promulgate the following exemption:

> Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

Compl. Ex. D at 53.

Based on the Register's recommendation, on November 27, 2006, the Librarian of Congress published a final rule that included an exemption phrased as the Register had recommended, as well as five other exemptions not challenged in this case. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 71 Fed. Reg. 68,472, 68,480 (Nov. 27, 2006) (to be codified at 37 C.F.R. § 201.40(b)(5)). The notice stated that the exemptions would be effective from the date of the notice through October 27, 2009. Id. at 68,479.

On December 5, 2006, TracFone filed a complaint in this Court against the Librarian of Congress and the Register of Copyrights. TracFone alleges that it sells cellular telephones and "has in the past successfully invoked the DMCA to prevent purchasers from 'hacking' proprietary software from TracFone handsets and reselling them [in the United States] and abroad," and that TracFone and its competitors have obtained injunctive relief in some suits.

9

Compl. at 2. TracFone states that "the breadth of the Exemption's language is such that it could be misconstrued to allow this conduct to be carried on with impunity (at least under the DMCA), which could have adverse consequences for TracFone's ability to prevent hacking, and potentially impact TracFone's practice of offering low-cost wireless telephone service . . . ." Compl. at 2. TracFone alleges that the promulgation of the exemption violated the Copyright Act, the Administrative Procedure Act, and TracFone's rights under the Due Process Clause of the Fifth Amendment. Compl. at 2, ¶¶ 36–43. TracFone further alleges that the DMCA's exemption provision violates the constitutional separation of powers. Compl. at 2, ¶¶ 44–47. TracFone requests relief declaring the exemption "contrary to law, null, void, and of no effect," enjoining the defendants from implementing, enforcing, or applying the exemption, and ordering the defendants to repeal the exemption. Compl. at 12.

## ARGUMENT

**I.     The Court lacks subject matter jurisdiction, because the plaintiff lacks standing.**

TracFone lacks standing to bring this suit, as TracFone is seeking relief to head off possible future controversies against unknown third parties, not to resolve a present live controversy against the defendants. Article III of the Constitution confines the jurisdiction of the federal courts to the adjudication of actual "cases" and "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). This limitation requires a plaintiff in federal court to satisfy the requirement of "standing." See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" of standing requires three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."

10

Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560–61 (citations omitted) (footnote omitted) (alterations in original).

The plaintiff bears the burden of establishing each of the three elements. Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1230 (11th Cir. 2000). If the plaintiff does not establish all three elements, the plaintiff lacks standing and the Court lacks jurisdiction. Id. The plaintiff must establish standing for each individual claim and request for relief in its complaint. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1867 (2006).

At the motion to dismiss stage, "general factual allegations . . . may be sufficient to show standing," Bischoff v. Osceola County, 222 F.3d 874, 878 (11th Cir. 2000), but a court "must evaluate standing based on the facts alleged in the complaint, and . . . may not 'speculate concerning the existence of standing or "piece together support for the plaintiff,"'" Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citation omitted). A court may examine facts outside the pleadings to determine whether the plaintiff has standing. Bischoff, 222 F.3d at 878 & n.4.

### A.     The plaintiff fails to satisfy the constitutional requirements of standing, because it does not have an injury in fact.

TracFone has failed to establish an injury in fact, because it alleges only speculative and remote harms, not the "actual or imminent" harm required to establish standing, and it further fails to identify any "legally protected interest" that has been harmed.

TracFone's complaint states:

While the scope and application of the Exemption are not entirely clear, the breadth of the Exemption's language is such that it could be misconstrued to allow this conduct to be carried on with impunity (at least under the DMCA), which could have adverse consequences for TracFone's ability to prevent hacking, and potentially impact TracFone's practice of offering low-cost wireless telephone service . . . .

11

Compl. at 2 (emphasis added).

TracFone thus describes future harm that "could" "potentially" occur, if the exemption were "misconstrued." This falls far short of the "actual or imminent" harm that the Constitution requires. A complaint that simply sets forth a conceivable future scenario in which the plaintiff could suffer harm does not establish an injury in fact. See, e.g., Defenders of Wildlife, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); Miccosukee Tribe, 226 F.3d at 1229–30 ("Even though the Tribe's complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements, we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none.").

TracFone also alleges that it has been harmed by resale of its equipment in the past, and that it has secured injunctive relief against companies that have resold its equipment. Compl. at 2, ¶¶ 21–22. However, the conduct that TracFone complained of in its earlier suits has ceased, and TracFone has not alleged that the issuance of the exemption will lead the defendants in those cases to resume their conduct in violation of the injunctions, which apparently remain in effect.[6]

_____

[6]TracFone has claimed violations of 17 U.S.C. § 1201(a)(1) in two past cases in this district, TracFone Wireless, Inc. v. Pan Ocean Communications, Inc., No. 05-CV-61956 (S.D. Fla. Aug. 7, 2006), and TracFone Wireless, Inc. v. Sol Wireless Group, Inc., No. 05-CV-23279 (S.D. Fla. Feb. 28, 2006). Both cases concluded in final judgment entered by stipulation of the parties. In both cases, TracFone's principal claims concerned trademark infringement and unfair competition. Neither judgment included any stipulation or finding of liability for any violation of 17 U.S.C. § 1201(a)(1) or any other provision of the DMCA, and neither judgment conditioned its permanent injunction on the continued applicability of the § 1201(a)(1) anticircumvention provision. See Pan Ocean Commc'ns, No. 05-CV-61956 (S.D. Fla. Aug. 7, 2006); Sol Wireless Group, No. 05-CV-23279 (S.D. Fla. Feb. 28, 2006).

Past harm unaccompanied by present effects is insufficient to amount to a present or imminent injury that will satisfy the requirements of standing. See Defenders of Wildlife, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (omission in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974))).

The injury-in-fact component of standing further requires that the plaintiff show impairment of a "legally protected" interest. TracFone's desire for criminal or civil sanctions to be imposed on third parties' conduct under the copyright law, standing alone, does not constitute a legally protected interest. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

**B.      The plaintiff fails to satisfy the causation requirement of standing, because the harm it describes would arise from the independent acts of third parties.**

TracFone also fails to meet the second requirement of standing, which demands that the alleged harm be "fairly traceable" to the defendants' conduct. "[T]he 'case or controversy' limitation of Art. III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976); see also Defenders of Wildlife, 504 U.S. at 561–62 ("When, . . . as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well."). The harm that TracFone describes, if the harm were to materialize, would be entirely the product of third-party

conduct, not the actions of the defendants. In <u>Allen v. Wright</u>, 468 U.S. 737 (1984), for example, the Supreme Court found that plaintiffs lacked standing to challenge the grant of tax exemptions to racially discriminatory private schools, noting that it was entirely speculative whether withdrawal of those exemptions would result in decreased segregation of public schools. <u>Id.</u> at 758; <u>see also</u> <u>DaimlerChrysler Corp. v. Cuno</u>, 126 S. Ct. 1854, 1862–63 (2006). Similarly, in this case, TracFone merely speculates that the promulgation of the exemption will lead unspecified third parties to step up their activities modifying and reselling equipment they have purchased from TracFone, and that the increase will result in net harm to TracFone's business. TracFone's predictions about the likely effect of the exemption rest on unfounded assumptions about how much these unknown parties' conduct is influenced by the DMCA rather than by unrelated factors, such as other provisions of state and federal law, contractual agreements with TracFone, and the vicissitudes of the marketplace.[7] Thus, TracFone has failed to satisfy the causation requirement of standing.

> **C.    The plaintiff fails to satisfy the redressability requirement of standing, because the relief it requests would be either advisory or otherwise outside the limits of judicial authority.**

Finally, TracFone fails to satisfy the third requirement of standing, which demands that it must be likely that the injury can be redressed by a favorable decision. TracFone requests relief in three forms: first, a declaration that the exemption is "contrary to law, null, void, and of no effect," second, an injunction against "implementation, enforcement or application of the Exemption," and third, an injunction requiring the defendants to repeal the exemption. Compl. at 12. Of these three forms of relief, the first two would not redress the harms the plaintiff describes

---

[7]For example, in addition to the DMCA, the two mobile phone resellers whom TracFone has sued in the past are also subject to trademark law, unfair competition law, and the terms of the permanent injunctions entered in the earlier litigation. <u>See</u> <u>supra</u> note 6.

and would be merely advisory. The third cannot satisfy the redressability requirement, because it requests relief that would compel a particular discretionary act by a government official and would thereby exceed the limits of judicial authority.

TracFone's first request for relief, which asks for a declaration that the exemption is "contrary to law, null, void, and of no effect," asks for an impermissible advisory opinion. The Court's authority to issue declaratory relief extends only to the resolution of actual controversies; it does not permit the Court to render advisory opinions on "abstract disagreements" about the validity or invalidity of provisions of law. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479 (1990) ("Even in order to pursue . . . declaratory and injunctive claims, . . . [Plaintiff] must establish that it has a 'specific live grievance' against the application of the statutes . . . , and not just an '"abstract disagreemen[t]"' over the constitutionality of such application." (citations omitted)); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40 (1937); MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 770–71 (2007). The Court cannot simply declare the exemption invalid in the absence of a live dispute in which the validity of the exemption is relevant. See Calderon v. Ashmus, 523 U.S. 740, 746–47 (1998) (holding that there was no case or controversy when a litigant sought a declaratory judgment to settle an issue of law that might be relevant in a future suit).

A declaration on the validity of the exemption would not redress the plaintiff's potential injury. Even if the Court were to issue such a declaration, it would not bind parties not before the Court, so it would not prevent the third-party conduct that TracFone fears. Cf. Muskrat v. United States, 219 U.S. 346, 361–62 (1911) ("Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts in fact to no more than an

expression of opinion upon the validity of the acts in question."). The possible precedential value of a decision by the Court does not satisfy the redressability requirement of standing. <u>See Ashmus</u>, 523 U.S. at 747–49. Finally, the fact that TracFone might derive some comfort or satisfaction from an advisory opinion also does not satisfy the redressability requirement. <u>See Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 107 (1998) ("By the mere bringing of his suit, <u>every</u> plaintiff demonstrates his belief that a favorable judgment will make him happier. But . . . psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.").

The plaintiff's second requested form of relief, an injunction barring the defendants from implementing, enforcing, or applying the exemption, also would not redress the potential harm TracFone fears. Once the Librarian has promulgated an exemption to the DMCA anticircumvention provisions, the exemption has full effect without any further action by either the Librarian or the Register. <u>See</u> 17 U.S.C. § 1201(a)(1)(D) (providing that once the Librarian has published an exemption, "the prohibition contained in [§ 1201(a)(1)(A)] shall not apply to such users with respect to such class of works for the ensuing 3-year period."). Because the Librarian and the Register have no further role in implementing, enforcing, or applying the exemption, an order preventing them from assuming such a role would be a futile gesture.

TracFone's third request for relief, which asks for an injunction requiring the defendants to "repeal" the exemption, also does not satisfy the redressability requirement, because it asks the Court to exceed the judicial function and order a specific act of rulemaking. Assuming that the DMCA authorizes the Librarian of Congress to withdraw an exemption outside the triennial rulemaking process, the exercise of that authority is a discretionary function. A district court may only issue mandamus or mandatory injunctive relief against a federal officer to compel

performance of ministerial—that is, nondiscretionary—functions. See, e.g., Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) ("The mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of '"a precise, definite act . . . about which [an official] had no discretion whatever."'" (citations omitted) (alteration in original)); Pan. Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317–18 (1958) (holding that an action seeking an order requiring the Panama Canal Co. to fix new tolls was not justiciable because the limits on the scope of mandamus relief also apply to mandatory injunctive relief); see also Miguel v. McCarl, 291 U.S. 442, 452 (1934). A request for mandamus or mandatory relief that exceeds that stricture is not justiciable. See, e.g., Allen v. Wright, 468 U.S. 737, 761 (1984) ("[Separation of powers] counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm, but to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties."); Pan. Canal Co., 356 U.S. at 317–18; cf. Kent v. Sec'y of Labor, 148 F.3d 1264, 1265 (11th Cir. 1998) (per curiam) (holding that the district court lacked statutory mandamus jurisdiction over a suit seeking mandamus to compel the Secretary of Labor to conduct an investigation); Rush v. Macy's N.Y., Inc., 775 F.2d 1554, 1558 (11th Cir. 1985) (upholding dismissal of a petition for mandamus to compel the FTC to intervene in a dispute between private parties).[8]

The plaintiff fails to meet its burden of establishing the three components of the "irreducible constitutional minimum" of standing, and the Court lacks subject matter jurisdiction. The Court should therefore dismiss the plaintiff's complaint for lack of jurisdiction.

---

[8]In reviewing agency rulemaking under the APA, a court has authority to "set aside" a rule whose adoption was improper. 5 U.S.C. § 706(2). However, as explained below, the judicial review procedures and remedies provided by the APA are not available in this case, because the actions of the Librarian of Congress are not subject to the APA. See infra section II.A.

## II.     The plaintiff's complaint additionally fails to state a claim on which relief can be granted.

TracFone's lack of standing alone requires that the Court dismiss this case.[9] However, TracFone's complaint also fails to state a claim on which relief may be granted, so dismissal would be appropriate on that ground as well.

Dismissal is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam). The Court may also consider documents that are central to the plaintiff's claim and are of unquestioned authenticity. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

### A.     The plaintiff fails to state a claim under the Administrative Procedure Act, because neither the Librarian's action nor the Register's recommendation to the Librarian is reviewable under the APA.

TracFone fails to state a claim under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, because actions taken by the Librarian of Congress are not reviewable under the APA, and recommendations made by the Register of Copyrights are not final agency action that would be reviewable under the APA.

Actions by the Library of Congress are not reviewable under the APA. The judicial

---

[9]When the plaintiff's complaint both fails for lack of subject matter jurisdiction and fails to state a claim, the court should dismiss for lack of jurisdiction. See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit before the close of business on September 30, 1981. Id. at 1209.

review provisions of the APA, 5 U.S.C. §§ 701–706, only permit review of actions taken by an "agency" as defined in §§ 551(1) and 701(b)(1) of the statute. See id. §§ 704, 706. The statutory definition of "agency" specifically excludes Congress. Id. §§ 551(1)(A), 701(b)(1)(A). For purposes of these provisions, the Librarian of Congress is considered part of Congress and thus outside the scope of the Act. Kissinger v. Reporters Cmte. for Freedom of the Press, 445 U.S. 136, 145 (1980) (noting that the Library of Congress is not an agency for purposes of § 551(1)(A)); see also Ethnic Employees of the Library of Cong. v. Boorstin, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985) (finding that the Library of Congress is not an agency under the APA).

The recommendation made by the Register of Copyrights in the course of the disputed rulemaking is also not reviewable under the APA or the Copyright Act, because the recommendation was not final agency action subject to review. The statute that creates the Copyright Office provides that actions taken by the Register of Copyrights are subject to the provisions of the APA. 17 U.S.C. § 701(e). However, judicial review under the APA is limited to "final agency action." 5 U.S.C. § 704. The Supreme Court explained in Bennett v. Spear, 520 U.S. 154 (1997):

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

> Id. at 177–78 (citations omitted).

The recommendation made by the Register of Copyrights to the Librarian of Congress in the § 1201(a)(1) rulemaking does not meet either requirement. The Supreme Court examined a similar framework for regulatory action in Dalton v. Specter, 511 U.S. 462 (1994). In that case, a

statute defined an elaborate procedure for the closure and realignment of military bases: the Secretary of Defense and an independent commission prepared recommendations to the President, who could then approve or disapprove the recommendations. Id. at 464–65. The Court found that the Secretary's and the commission's recommendations were not "final agency action" reviewable under the APA, because their reports "'carr[ied] no direct consequences' for base closings" and were "'more like a tentative recommendation than a final and binding determination.'" Id. at 469–70. The Court found it did not matter that the recommendations determined the range of choices the President could make under the statute. Id. at 470 ("That the President cannot pick and choose among bases, and must accept or reject the entire package offered by the Commission, is immaterial.")

Similarly, in the § 1201(a)(1) rulemaking proceeding, the Register of Copyrights' recommendation, though it is a prerequisite to the final action taken by the Librarian, is only an intermediate step toward that final action. The recommendation submitted by the Register of Copyrights therefore is not final agency action reviewable under the APA.[10]

Because neither the Librarian's actions nor the Register's actions in the rulemaking are reviewable under the APA, the plaintiff fails to state a claim under the APA.

**B.      The plaintiff fails to state a claim for violation of the DMCA, because the adoption of the exemption was in full accord with the statute.**

TracFone fails to state a claim under the DMCA, because none of TracFone's allegations suggests that any aspect of the rulemaking process or the substance of the exemption violated any provision of the DMCA.

---

[10]Even if APA review were available, the allegations in this case would not state a claim under the APA. See infra pp. 24–25 (discussing the procedural requirements of the APA); infra p. 21 (discussing why the decision to promulgate the rule was supported by substantial evidence).

The statute requires the Librarian of Congress to promulgate exemptions in an informal rulemaking based on the recommendation of the Register of Copyrights, who in turn is to consult with the Assistant Secretary for Communications and Information of the Department of Commerce and report and comment on her views. 17 U.S.C. § 1201(a)(1)(C). TracFone's complaint alleges no departure from these procedural requirements. See, e.g., Compl. at ¶ 27 (action by Librarian based on recommendation of Register of Copyrights); ¶ 33 (consultation with Acting Assistant Secretary for Communications and Information).

TracFone also makes no allegations that suggest that the substance of the exemption violates the DMCA. As the statute demands, the exemption to be codified at 37 C.F.R. § 201.40(b)(5) properly identifies a "class of copyrighted works for which the Librarian has determined, pursuant to the rulemaking conducted under [§ 1201(a)(1)(C)], that noninfringing uses by persons who are users of a copyrighted work are, or are likely to be, adversely affected." 17 U.S.C. § 1201(a)(1)(D). The Librarian's conclusion was properly supported by evidence in the record. The evidence showed that "in many cases, . . . software locks preclude use of a handset owned by a consumer even though that handset is intrinsically capable of use on alternative networks." Compl. Ex. D at 49. The evidence further showed that these locks inhibited handset owners' use of the mobile firmware for purposes unrelated to copyright infringement. Compl. Ex. D at 49–50. Indeed, the evidence indicated that the purpose of the locks was to facilitate TracFone's method of doing business, not to prevent copyright infringement or serve any other copyright-related interests. Compl. Ex. D at 50–51.

TracFone therefore fails to allege any violation of the DMCA or the Copyright Act. See Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to

allege some specific factual bases for those conclusions or face dismissal of their claims.").

     **C.**    **The plaintiff fails to state a claim under the Due Process Clause of the Fifth Amendment, because due process does not require the government to consult with individual citizens before issuing general policy.**

TracFone also fails to state a claim under the Due Process Clause of the Fifth Amendment. The complaint describes no set of facts that could amount to a due process violation, because due process does not require a government agency to provide concerned parties with individualized notice of rulemaking or individualized opportunities to comment and influence the rulemaking process.

When an agency promulgates rules of general applicability, due process does not require the agency to identify every party that might conceivably have an interest in a rulemaking, provide individualized notice to every such party, and obtain comments from every such party. Such an interpretation of the Due Process Clause would paralyze government. See, e.g., Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption."); Minn. State Bd. for Comm'ty Colls. v. Knight, 465 U.S. 271, 284 (1984) ("Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. . . . To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.").

The procedures followed by the Librarian of Congress and the Register of Copyrights went beyond what due process requires. As TracFone's complaint acknowledges, the Copyright Office conducted a public comment process that was announced in the Federal Register and held

a public hearing on the exemption. Compl. ¶¶ 13, 15; see also Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384–85 (1947) (noting that everyone is charged with knowledge of the contents of the Federal Register). The complaint further acknowledges that TracFone did not make its first attempt to submit a comment until long after the expiration of the announced reply comment period, in the form of a petition seeking consideration of late-submitted comments. Compl. ¶ 24.

The complaint alleges that the Copyright Office did not simply consider and deny TracFone's petition for leave to make an untimely submission, but refused to consider TracFone's petition altogether. Compl. ¶ 30. In the first place, the demands of due process did not compel the defendants to consider TracFone's petition. This is immaterial, however, because the documents attached to TracFone's complaint make it clear that the Copyright Office in fact fully considered TracFone's petition for late consideration; what the Copyright Office disregarded was TracFone's submission on the merits of the exemption.

TracFone's petition and submission and the Copyright Office recommendation reveal that TracFone sent the Copyright Office a single document, part of which comprised a petition for consideration and part of which comprised a proposed submission arguing against the proposed exemption.[11] Compl. Ex. C at 3–4 ("Petition for Consideration of Late Reply Comments"); Compl. Ex. C at 5–14 ("Opposition to Proposed Exemption from Section

---

[11]Because TracFone's petition and submission and the Copyright Office recommendation are attached as exhibits to the complaint, Compl. Exs. C, D, the documents are an integral part of the complaint itself, and the Court must consider their contents in determining whether the complaint adequately states a claim. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1429–30 (11th Cir. 1985) (per curiam); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("On a motion to dismiss . . . [c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." (citation omitted)).

1201(a)(1)"). The Copyright Office thoroughly reviewed the portion of the document that comprised TracFone's petition for late consideration. Compl. Ex. D at 44–48. The Copyright Office determined that TracFone had not presented adequate justification for making an untimely submission, so it decided that it would not consider the portion of the document that contained TracFone's submission on the merits of the exemption. Compl. Ex. D at 44–48. TracFone's complaint therefore does not even properly allege that the Copyright Office failed to consider its petition.

The Librarian's and the Copyright Office's refusal to consider TracFone's untimely remarks also could not have violated due process. Even in the context of statutory review under the APA, courts have consistently upheld agencies' enforcement of announced deadlines for comments. See Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 543 (D.C. Cir. 1995) ("Agencies are free to ignore . . . late filings . . . ."); Bd. of Regents of the Univ. of Wash. v. EPA, 86 F.3d 1214, 1222 (D.C. Cir. 1996) (holding that the agency had no obligation to consider comments submitted after the close of the comment period); Reytblatt v. U.S. Nuclear Regulatory Comm'n, 105 F.3d 715, 723 (D.C. Cir. 1997) (holding that the agency had no obligation to address comments submitted after the close of the comment period even though the agency stated that it had considered untimely comments). Refusal to consider untimely filed comments cannot constitute a denial of the constitutional guarantee of due process.

The fact that the language of the exemption ultimately issued by the Librarian of Congress was narrower than the language proposed in the Wireless Alliance-Pinkerton comment also does not support a due process claim. In the first place, as discussed above, due process does not require individualized notice of general regulation. Moreover, the Copyright Office's changes merely refined and narrowed the proposal in response to testimony at the public hearing,

while retaining the focus, purpose, and basic form of the original proposal. Even the statutory requirements imposed by the APA reflect that the very purpose of notice-and-comment rulemaking is to permit revision of a proposed rule in response to public comments. The APA does not require an agency to publish the text of a proposed rule; it requires publication of "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b) (emphasis added), discussed in Pennzoil Co. v. FERC, 645 F.2d 360, 371 (5th Cir. May 1981); Tucker v. Atwood, 880 F.2d 1250, 1251 (11th Cir. 1989) (per curiam). The Copyright Office's October 3, 2005, notice of proposed rulemaking adequately described the subject of the rulemaking—that is, the classes of works that should be exempted from the § 1201(a)(1) prohibition—and the issues involved, including the criteria for determining whether a particular exemption is warranted. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 70 Fed. Reg. 57,526, 57,527–30 (Oct. 3, 2005); cf. Crawford v. FCC, 417 F.3d 1289, 1295–97 (D.C. Cir. 2005) (finding that an FCC notice of frequency allocation proceedings adequately informed an applicant that his untimely filed proposal could be precluded by a conflicting proposal even though the FCC had not published the conflicting proposal).

The complaint reveals that TracFone can prove no set of facts that would amount to a violation of due process.

### D.   The plaintiff fails to state a claim based on the constitutional separation of powers, because the DMCA validly grants rulemaking authority to an independent agency.

TracFone's final claim is that the rulemaking provisions of the DMCA violate the constitutional separation of powers, either because the statute effects an improper delegation of Congress's legislative authority or because the statute places an executive function in the hands

of an agent of Congress. TracFone fails to state a claim, because the Librarian and Register are officers appointed in accord with the Appointments Clause, and they conduct the DMCA rulemaking process free from the control of Congress and its members.

Congress has broad authority to devise regulatory schemes in which other government actors implement policy through rulemaking. In Whitman v. American Trucking Ass'ns, 531 U.S. 457 (2001), the Supreme Court observed that it has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law," and thus has found an improper delegation of legislative authority in only two cases in its history. Id. at 474–75 (quoting Mistretta v. United States, 488 U.S. 361, 416 (1989) (Scalia, J., dissenting)) (internal quotation marks omitted).[12]

The Constitution does place some constraints on Congress's design of regulatory institutions. Congress may exercise legislative authority itself only through the procedures outlined in Article I, section 7 of the Constitution: passage by both Houses of Congress and presentment to the President. U.S. Const. art. I, § 7; see, e.g., INS v. Chadha, 462 U.S. 919, 951 (1983). In addition, Congress may not vest executive powers in an officer answerable only to Congress. See, e.g., Bowsher v. Synar, 478 U.S. 714, 726 (1986). The DMCA's grant of rulemaking authority to the Librarian of Congress does not violate either principle, because even though the Library of Congress largely performs functions that assist Congress, the Librarian and

---

[12]The Supreme Court in Whitman reiterated that when Congress grants rulemaking authority to a government body, it must set out an "intelligible principle" to guide rulemaking. See Whitman, 531 U.S. at 472, 474–76. The DMCA's enumeration of criteria to guide the § 1201 rulemaking process certainly satisfies this minimal requirement. See 17 U.S.C. § 1201(a)(1)(C) (setting out the determination the Librarian is to make and listing four factors the Librarian must consider); Whitman, 531 U.S. at 474–76 (observing that the Supreme Court has upheld statutes that state broad principles for regulation, including statutes that simply authorized regulation in the "public interest").

the Register conduct rulemaking proceedings as an independent agency. Congress exercises no appointment or removal authority over the Librarian or the Register and has no direct influence on the DMCA rulemaking process.

The § 1201 rulemaking scheme is wholly unlike the schemes that courts have held invalid based on separation of powers in the past. Such schemes involved direct participation by Congress or members of Congress in the exercise of executive or administrative powers or the appointment or removal of officers who perform administrative functions. See, e.g., Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 276–77 (1991) (invalidating a scheme that created a review board partly composed of members of Congress); Bowsher, 478 U.S. at 733–34 (invalidating investment of executive powers in an officer removable by Congress); Buckley v. Valeo, 424 U.S. 1, 140–41 (1976) (per curiam) (holding that Congress could not vest administrative powers in a commission whose members were not appointed pursuant to the Appointments Clause, U.S. Const. art. II, § 2, cl. 2). The DMCA rulemaking scheme does not raise these concerns, because members of Congress do not participate in the rulemaking, and the Librarian of Congress and the Register of Copyrights are not appointed by Congress or subject to removal by Congress. The Librarian of Congress is appointed by the President with the advice and consent of the Senate, 2 U.S.C. § 136, and the Register of Copyrights is in turn appointed by the Librarian of Congress, 17 U.S.C. § 701(a).

In Eltra Corp. v. Ringer, 579 F.2d 294 (4th Cir. 1978), the Fourth Circuit rejected a separation-of-powers challenge against the Copyright Office's authority to perform the administrative function of registering copyrights. Id. at 301. The Eltra court noted that the Librarian is appointed by the President, and the Register is appointed by the Librarian. Id. at 300. Consequently, the Eltra court concluded, for purposes of the Appointments Clause the Librarian

was an "Officer[] of the United States," U.S. Const. art. II, § 2, cl. 2, and the Register of Copyrights was a "inferior Officer[]," id. Eltra, 579 F.2d at 300. Both officers were appointed in a manner consistent with the Appointments Clause, so the organization of the Copyright Office did not trigger the same concerns as the commission in Buckley v. Valeo, 424 U.S. 1 (1976), some of whose members were appointed by Congress. Eltra, 579 F.2d at 300. The Eltra court observed that the Librarian performed certain functions that assist Congress, such as obtaining information relevant to the legislative process, but it concluded that those functions did not make the Librarian a purely legislative officer any more than the Librarian's assistance to the judiciary made him a judicial officer. Id. at 301. Moreover, the court observed, "The Supreme Court has properly assumed over the decades since 1909 that the Copyright Office is an executive office, operating under the direction of an Officer of the United States . . . ." Id. at 301. The Copyright Act's constitutionality, the court observed, "has been generally assumed, including the power of the Register to issue rules and regulations." Id. at 299.

The fact that the Library of Congress is considered part of Congress for the purposes of the Administrative Procedure Act, see supra section II.A, has no bearing on the status of the Library of Congress with respect to constitutional separation of powers in the context of DMCA rulemaking. The classification made by the APA merely reflects Congress's decision to exclude certain government authorities from the scope of a particular statute. Congress could presumably change this decision at any time by amending the APA; in fact, Congress took just such a step when it enacted the 1976 amendments to the Copyright Act, making the provisions of the APA applicable to certain actions by the Register of Copyrights, though not to actions of the Librarian of Congress. See Pub. L. No. 94-553, § 701(d), 90 Stat. 2541, 2591 (1976) (codified as amended at 17 U.S.C. § 701(e)).

Thus, because the Librarian and the Register are officers duly appointed under the Appointments Clause, and neither Congress nor its members exercise any direct control over the DMCA rulemaking process, TracFone fails to state a claim based on the separation of powers.

**E.     In the alternative, the Court should grant summary judgment in favor of the defendants, because the plaintiff's claims have no legal basis.**

In the alternative, the Court should grant summary judgment in favor of the defendants based on its review of the record of administrative proceedings. A court considering a motion to dismiss may accept matters outside the pleadings and treat the motion as a request for summary judgment. Fed. R. Civ. P. 12(b). Accordingly, while the plaintiffs do not appear to challenge the reasonableness of the Librarian's decision, the record of administrative proceedings pertinent to the exemption at issue is attached as Exhibit A in the event that the Court decides to review whether the Librarian's decision had an adequate basis in the record.[13]

A party is entitled to summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); cf. Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1250 (11th Cir. 1996) (affirming a grant of summary judgment founded in the district court's review of the administrative record).[14] As explained above, see supra sections II.A–D, the plaintiff's claims fail as a matter of law. Thus, if the Court opts to treat this motion as a motion

---

[13]See, e.g., Administrative Record at 620–25, 665–66.

[14]A court reviewing the actions of an administrative agency generally conducts its review based on the administrative record compiled by the agency, without additional discovery. See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d at 1246–47 (11th Cir. 1996) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). The record for review may exclude privileged materials not containing additional facts relevant to the agency decision and not relied on as the basis for the agency's decision. See, e.g., Nat'l Courier Ass'n v. Bd. of Governors of the Fed. Reserve Sys., 516 F.2d 1229, 1241–42 (D.C. Cir. 1975); Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 13 (D.D.C. 2001).

for summary judgment based on review of the administrative record, the defendants are entitled to summary judgment.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss TracFone's complaint for lack of jurisdiction. In the alternative, the Court should dismiss the complaint for failure to state a claim on which relief may be granted. In the alternative, the court should grant summary judgment in favor of the defendants based on review of the administrative record.

Dated: February 5, 2007                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

R. ALEXANDER ACOSTA
United States Attorney

THEODORE C. HIRT
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants