IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-cv-22942-GRAHAM/O'SULLIVAN

TRACFONE WIRELESS, INC.        )
                               )
    Plaintiff,               )
                               )
v.                             )
                               )
JAMES H. BILLINGTON, LIBRARIAN OF )
CONGRESS and MARYBETH PETERS,  )
REGISTER OF COPYRIGHTS,        )
                               )
    Defendants.              )
_____ )

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### Introduction

Defendants conducted a rulemaking proceeding under the Digital Millennium Copyright Act (the "Act").  They entertained a proposed new exemption <u>expressly</u> aimed at taking away injunctive relief under the Act against those who hack into cellphones sold by TracFone and disable its proprietary software.  They cited that injunctive relief as the "harm" the proposed exemption would prevent.  They specifically discussed TracFone's business model and whether its benefits to consumers might be adversely affected by the proposed exemption.

All of this took place without TracFone's knowledge.  Neither the proposed exemption nor its substance was published in the Federal Register until after the exemption was

promulgated.  When TracFone learned of the this, it promptly
sought to be heard.  Defendants dismissed TracFone's comments as
"untimely," despite the fact that they had requested additional,
out-of-time comments from the proponents, and accepted those
comments on the same day TracFone filed its comments.

Having excluded TracFone from participating in the
administrative proceedings, Defendants now seek to prevent
TracFone from being heard in court, arguing TracFone lacks
standing.  Defendants ignore that TracFone alleges an injury to
its procedural rights, which relaxes the normal standing
requirements and affords TracFone standing to sue.

Defendants also seek to escape court review by arguing that
the Librarian, who approved the Register's proposed rule and the
exclusion of TracFone's comments, is part of "Congress" and
therefore not covered by the Administrative Procedure Act
("APA").  Then, however, in response to TracFone's separation of
powers argument, they assert that the Librarian and the
Register, who conducted the rulemaking, acted as an executive
agency.  Defendants cannot have it both ways.

The Register, who conducted the rulemaking, is expressly
governed by the APA, and because – as Defendants concede - the
Librarian and Register acted in an executive capacity in
conducting the rulemaking, the proceedings are in fact subject
to the APA.  Should the Court conclude that the Librarian is

part of Congress, however, then the rulemaking proceedings violated the separation of powers doctrine because they involve the exercise of executive functions by a legislative agency, or the exercise of legislative power without bicameral passage and presentment.  In all events, Defendants' actions are subject to review as violative of TracFone's due process rights.

It remains only to note that Defendants seek summary judgment at the very outset of this case, when TracFone has not had any opportunity for discovery.  If anything, TracFone believes that it is entitled to summary judgment and intends to move for summary judgment once it has determined whether it is necessary to seek any discovery.  Greensboro Lumber Co. v. Georgia Power Co., 844 F.2d 1538, 1545 (11th Cir. 1988) ("Summary judgment is rarely appropriate before the party opposed to the motion has had at least some opportunity to gather material facts through discovery.").

## I.   FACTS[1]

### A.   TracFone's Business Model and Its Efforts to Prevent "Hacking" Through Injunctive Relief under the Act

TracFone provides a "pay-as-you-go" wireless service, with no term contracts and no monthly bills.  Compl. ¶ 7.  A customer simply purchases a TracFone wireless handset and Prepaid

---

[1] TracFone here only highlights certain matters omitted or insufficiently set forth in Defendants' statement of facts, as well as additional facts set forth in the declaration submitted by TracFone.

Wireless Airtime cards.  Id. TracFone subsidizes the cost of the handsets, and recoups that cost as consumers purchase airtime minutes from TracFone.  Id. ¶ 8.  This allows TracFone to provide wireless telephone service to people who could not otherwise afford such service.  Id.

TracFone is able to provide this service only because it incorporates "software locks" to prevent hacking.  Id. ¶ 9. TracFone, however, faces a continuing problem of persons hacking into and disabling TracFone's proprietary software, and re-selling the "blank" handsets as new telephones. Id. ¶ 21.  The Act prohibits circumventing technologies that control access to copyrighted works, such as the computer programs in TracFone's cell phones.  17 U.S.C. § 1201(a).  It has served as the basis for injunctive relief, including permanent injunctions entered by this Court.  Compl. ¶ 22; see also Pollak Decl.

**B.   Defendants' Failure to Publish Notice**

The Notice of Inquiry initiating the rulemaking proceedings did not set forth any proposed exemptions from the Act or the possible subject areas for proposed exemptions, nor did it set forth Defendants' thinking with regard to any such exemptions. Instead, the Notice only solicited written "comments" that themselves would propose exemptions; it also authorized "reply" comments. Compl. ¶ 13; 70 Fed. Reg. 57526; Administrative Record, p.1 (hereinafter "R.___").  Thereafter, certain comments

proposed an exemption for the class of works comprised of "computer programs that operate wireless communications handsets."[2]  Compl. ¶ 14.  In "reply" comments, the proponents referenced TracFone Wireless, Inc. v. Sol Wireless, 05-CV-23279 (S.D. Fla), in which TracFone sought to enjoin the unlocking of its phones, based on the Act.  Compl. ¶ 17; R. 92.

Neither the comments initially proposing the Exemption nor the "reply" comments were published in the Federal Register. Instead, they were posted only on the website of the Copyright Office.  See 70 Fed. Reg. 57530, R.1; 71 Fed. Reg. 9302, R.7. Further, prior to its adoption, the proposed Exemption was not published in the Federal Register.  TracFone had no actual notice of the proposed Exemption or the fact that the injunctions TracFone had obtained and would need in the future were the target of a proposed Exemption. Compl. ¶ 19-20; Pollak Decl. ¶¶ 29-30.

**C.   Defendants' Lack of Input from Adversely Affected Parties**

At a hearing on proposed exemptions, proponents discussed TracFone Wireless, Inc. v. Sol Wireless.  Compl. ¶ 17; E.g., R.116, 119, 131-32, 163-65.  The proponents argued that the

---

[2] During the hearings, the Copyright Office suggested a modification of the proposed exemption, and the Final Rule contained further modifications.  In this memorandum, Tracfone will use the "Exemption," to refer to the exemption at issue in its various forms.

injunction entered there demonstrated harm from the enforcement of the Act's anti-circumvention rule.  Id.  Copyright Office representatives expressed concern, however, that TracFone's business model may be advantageous to consumers, and that the proposed Exemption might harm consumers.  Id. ¶ 23; R.163-64, 189.

Almost five months after the hearing, and in the absence of a decision by the Register, the Copyright Office solicited further comments from Ms. Grannick, representing The Wireless Alliance.  Compl. ¶ 18.  As it explained, "the record . . . is rather thin and we require more detailed information in order to complete our evaluation..."  R.296.  Mr. Metalitz, representing the Joint Reply Commenters, was also given the opportunity to comment.  R.295.

On September 11, Ms. Grannick submitted a 13 page response, together with exhibits.  R.304.  She stressed the lack of any comments from the wireless industry, noting that "more specific technical information in response to the Copyright Offices's question is exclusively in the hands of the carriers and handset makers, yet these entities have not appeared to contest this request for an exemption..."  R.306.  Mr. Metalitz suggested the Copyright Office consider a submission he understood was being prepared by the industry.  R.303

On the same day those additional responses were filed, TracFone submitted its Petition. Compl. ¶ 24 & Exh. C. The Petition stated that TracFone was unaware of the proposed Exemption until August 2006. Id., Exh. C at p. 3.

The Petition also set forth TracFone's substantive comments on the Exemption, including detailed information concerning the locking software on TracFone's cell phones and TracFone's business model. This was precisely the information that the Copyright Office solicited from Ms. Grannick after the hearing. TracFone further showed that, contrary to the proponents' assertion that the Exemption was needed because consumers could not purchase unlocked phones, consumers can do that easily -- they simply have to pay more for them than for TracFone's phones, whose purchase price is subsidized by TracFone. As such, the Exemption would harm consumers unable to afford traditional wireless service contracts. See generally, Compl., Exh. C.

On October 28, 2006, approximately a month and a half after its receipt of the additional comments from Ms. Grannick and Mr. Metalitz, as well as TracFone's Petition, the Copyright Office extended the expiration date of the existing exemptions in order to allow completion of the rulemaking proceeding after the October 31 deadline.

**D.   Defendants' Refusal to Consider TracFone's Comments**

In making her Recommendation, the Register refused to
consider TracFone's comments, despite the request of the Acting
Assistant Secretary of Commerce for Communications and
Information ("Assistant Secretary"), with whom the Register is
required to consult before making a recommendation to the
Librarian.  Compl. ¶ 33-35; see 7 U.S.C. § 1201(a)(1)(C).  He
had urged the Register to consider TracFone's submissions, which
would "afford [the Register] a complete record in which the
views of both users and creators of content are currently
represented."  Compl. ¶ 33-35; R.571-72; 619-620; R.665-66.

Despite finding those concerns about the incomplete record
"understandable," the Register refused to consider TracFone's
submission.  Compl. ¶ 30, 35; R.620. The Register stated this
would set a bad precedent and undermine the procedural
requirements of this proceeding and of the rulemaking process in
general."  R.620; R.666; Compl. ¶ 35.  The Register did not
explain why its acceptance of the out-of-time submissions of
those in favor of the Exemption did not create those very same
concerns.

Of importance to this lawsuit, the Register did not suggest
that TracFone was on constructive notice of the proposed
Exemption based on publication in the Federal Register.  Nor did
the Register find that TracFone had actual notice.  Instead, the

Register stated it was "sufficient to note that <u>TracFone's trade association - CTIA</u> - was aware of the proposal in late January or early February." Compl. ¶ 31; R.617.  The Register thereby imputed CTIA's knowledge of the proposed Exemption to TracFone.

The Register also stated that TracFone's lack of actual notice would not constitute sufficient grounds to allow its late submission.  R.617.  Although Defendants had already extended the existing deadlines pending completion of the rulemaking, and considered out-of-time comments from proponents, the Register stated that consideration of TracFone's comments would "wreak havoc" on the decision-making process.  R.619.  The Register stated it would be unfair to the proponents to accept TracFone's comments without giving them an opportunity to respond. The Register conceded, however, that the proponents had in fact responded to TracFone's comments.  The Register nonetheless stated, without explanation, that this "does not ameliorate the unfairness and undue burden caused by the tardy submissions." <u>Id</u>. at n.135.

**E.   The Final Rule**

Thereafter, the Librarian of Congress, on the recommendation of the Register, published the Final Rule, incorporating the Exemption recommended by the Register.  71 Fed. Reg. 6842; R.661.  Although Defendants suggest in their motion that TracFone has not shown the Exemption will impact its

business and legal rights, Defendants never assert that the
Exemption does not do precisely what its proponents intended --
preclude TracFone from obtaining injunctive relief against
hacking under the Act.   In all events, the existence of the
Exemption unquestionably endangers TracFone's legal efforts to
stop unauthorized hacking of its cell phones.   See Pollak Decl.
¶ 31.

## II.   ARGUMENT

### A.   TracFone has Standing to Bring this Action.

Defendants cite Lujan v. Defenders of Wildlife, 504 U.S.
555, 560 (1992), for the general Article III, constitutional
standing requirements of "injury in fact," "causation" and
"redressability."   Def. mem. at 10-11.   They argue TracFone
cannot show it will be denied injunctive relief and hence cannot
establish actual or imminent harm as a result of the Exemption.
Id. at 11-12.   They further argue that the only harm suffered by
TracFone has already occurred, and that whether TracFone will be
harmed in the future will depend on actions of third parties,
such as the hackers TracFone seeks to enjoin.   Id. at 13-14.

To the contrary, TracFone has alleged an ongoing problem
with illegal hacking, and its sworn declaration establishes that
TracFone's legal efforts to stop this conduct are ongoing.
Moreover, Defendants ignore that Lujan expressly distinguished

cases involving the violation of procedural rights, such as here, from standing cases such as those cited by Defendants.[3]

Procedural rights are different. 504 U.S. at 572 n.7. "The person who has been accorded a procedural right to protect his concrete interests can assert that right <u>without meeting all the normal standards for redressability and immediacy</u>." <u>Id</u>. (emphasis added). In procedural injury cases, the injury in fact requirement is met by showing a reasonable probability that the procedural violation will threaten a particularized interest, so that the plaintiff is different from citizens who merely have a general interest in the government's compliance with law. <u>Id</u>. at 573-76 n.8.

Where such a particularized interest exists, the requirements of causation and redressability are relaxed, and the plaintiff has standing even if it is uncertain whether vindicating the plaintiff's procedural rights will in fact change the agency's ultimate decision or otherwise prevent the potential harm to that particularized interest. <u>Lujan</u>, 504 U.S. at 573 n.7; <u>Sierra Club v. Johnson</u>, 436 F.3d 1269, 1279 (11th Cir. 2006)(standing established where proper procedures "could have" led to additional public input, which, in turn, "could

_____

[3] Apart from <u>Lujan</u>, none of Defendants' cases cited at pages 13-17 do not address a procedural injury such as that asserted here.

have" led to improvements in permit).  An injury to plaintiff's
procedural rights, which threatens plaintiff's particularized
interests, can be redressed by a court order directing the
agency to comply,[4] and is sufficient to confer standing. Ouachita
Watch League v. Jacobs, 463 F.3d 1163, 1172-73 (11th Cir. 2006);
Johnson v. AllSteel, Inc., 259 F.3d 885 (7th Cir. 2001) (ERISA
amendment giving administrator more discretion in administering
plan rendered employees' benefits "less solid" and was injury in
fact for purposes of employees challenging amendment).

TracFone is not asserting a "generalized grievance," nor an
interest that is indistinguishable from that of other citizens.
Its interest is particularized, based on its unique business
model.  In fact, injunctive relief of the sort this Court
previously has granted TracFone under the Act to prevent hacking
was touted as the "harm" that the proposed Exemption would
eliminate.  The potential harm to TracFone's business model from
the Exemption was emphasized by the Copyright Office during the
proceedings.

---

[4] Defendants cite cases holding that mandamus and injunctive
relief are not available on issues that involve agency
discretion or judgment.  Def. mem. at 17.  Affording the
procedural rights at issue here, however, is not discretionary;
it is required by law.  See Panama Canal Co v. Grace Line, Inc.,
356 U.S. 309, 318 (1958) (where the matter is clear, where the
agency is clearly derelict in failing to act, or where the
matter turns on a question of law, judicial relief is often
available).  Moreover, Defendants admit a court has power to
invalidate agency action under the APA.  Def. mem. at 17 n.6.

TracFone has also established a reasonable probability that Defendants' actions threaten that interest.  The Exemption endangers a strong legal remedy, placing TracFone in a weaker position to stop hacking.  These circumstances, and the actual deprivation of TracFone's procedural rights, are sufficient to give TracFone standing.

**B.    The Complaint States a Claim for Violation of the APA and Due Process.**

    **1.    The Notice Requirements of the APA and Due Process were Violated.**

        **a.    Notice and Comment Requirements for Rulemaking**

The APA and the Fifth Amendment requirement of due process both require that persons affected by proposed rules be given notice of them and an opportunity to participate in the rulemaking process through the submission of comments.  See, e.g., Utility Solid Waste Activities Group, 236 F.3d 749, 752 (D.C. Cir. 2001).  The former Fifth Circuit explained in Brown Express, Inc. v. U.S., 607 F.2d 695 (5th Cir. 1979) that "these [notice and comment] provisions afford an opportunity 'for the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated.'  Congress realized that an agency's judgment would be only as good as the information upon which it drew.  It prescribed these procedures to ensure that the broadest base of information would be provided to the agency by

those most interested and perhaps best informed on the subject
of rulemaking at hand." Id. at 701 (citations omitted).

Accordingly, except under circumstances not present here,
the agency must publish an adequate notice in the Federal
Register. 5 U.S.C. § 553(b); see generally Mobil Oil
Exploration & Producing N. America, Inc. v. FERC, 881 F.2d 193,
199 (5th Cir. 1989). In order to allow meaningful comment, the
notice must set forth the text of the proposed rule, or at least
the subject matter of the proposed rule, and include the
direction the agency contemplates going in the rulemaking
proceeding. See 5 U.S.C. § 553(b)(1)-(3); see also, e.g.,
Lloyd Noland Hospital & Clinic v. Heckler, 762 F.2d 1561, 1565-
66 (11th Cir. 1985) (purpose of notice is to disclose the
thinking of the agency); United Church Board for World
Ministries v. S.E.C., 617 F. Supp. 837, 839-40 (D.D.C. 1985)
(failure to make agency views known circumvents the purpose of
the notice requirement).

> **b.   Defendants' Failure to Provide Adequate Notice**

While Defendants now argue that the notice of the proposed
rulemaking proceeding published in the Federal Register provided
constructive notice, see Def. mem. at 22-23, 25, they did not
suggest that when they rejected TracFone's comments. That is

not surprising, given the deficiencies in the published notice.[5]
That notice did not provide the text of any proposed rule with
respect to cellular telephones, nor did it disclose an intent to
consider exempting the circumvention of locks protecting
cellular telephones.

Instead, the very purpose of that Notice of Inquiry was to
solicit proposals, which would themselves identify the specific
subject areas for rulemaking.  Such open-ended requests for
comments do not provide constructive notice.  United States
Church Board, 617 F. Supp. at 837-41 (notice that merely invited
comment and did not indicate agency's "proposed direction" was
insufficient to provide constructive notice).

Neither the Notice of Inquiry nor the subsequent Notice of
Public Hearing provided the substance of the proposed Exemption
or Defendants' proposed views as to the exemptions.  See, R.1,
R.7.  They merely referred readers to comments of others posted

_____

[5] Defendants do not here argue that TraceFone had actual notice
based on information obtained by its trade association but not
conveyed to TracFone.  In fact, notice to one interested party
does not constitute actual notice to another.  See Utility Solid
Waste, 236 F.3d at 754 (fact that counsel for another interested
party attended meeting discussing proposed rule is irrelevant
to whether petitioner had actual notice); MCI Telecomm. Corp. v.
FCC, 57 F.3d 1136, 1142-43 (D.C. Cir. 1995). (even if one party
had notice of agency's intention, agency failed to demonstrate
other parties had notice).  In short, "[o]nly publication in the
Federal Register meets the APA requirement of constructive
notice." Rodway v. U.S. Dep't of Agriculture, 514 F.2d 809, 815
(D.C. Cir. 1975).

on the agency's website.   To place interested parties on

constructive notice, however, the notice must be published in

the Federal Register.   It is not sufficient to provide notice

via the Internet.   <u>Utility Solid Waste</u>, 236 F.3d at 754.   Nor

does the fact that notice could have been gleaned from comments

submitted to the agency suffice.   <u>Fertilizer Institute v.</u>

<u>E.P.A.</u>, 935 F.2d 1303, 1312 (D.C. Cir. 1991) (agency cannot

"bootstrap" notice from comments); <u>Public Citizen v. Mineta</u>, 427

F. Supp. 2d 7, 14 (D.D.C. 2006) (same).

Because the Exemption was promulgated in violation of the

requirements of the APA and due process, it should be declared

invalid.   <u>North Alabama Express, Inc</u>, 585 F.2d 783 (5th Cir.

1978) (agency action invalid in the absence of adequate notice);

<u>Public Citizen v. Mineta</u>, 427 F. Supp. at 12 (same).

    **2.**    **Defendants' Refusal to Consider TracFone's Late**
        **Submission, While Considering Late Submissions of**
        <u>**Proponents, was Arbitrary and Capricious**</u>**.**

Defendants refused to consider TracFone's comments,

although the Register invited and considered the untimely

comments of others.   While an agency is permitted to insist on

compliance with its rules, it may not refuse to waive non-

compliance when its reason is so insubstantial as to render the

denial an abuse of discretion.   <u>Westar Energy, Inc. v. FERC</u>, 473

F.3d 1239, 1241 (D.C. Cir. 2007).   Nor can it extend a deadline

for one party, while not extending the deadline for another

party under similar circumstances.  Such conduct is "'the quintessence of arbitrariness and caprice.'"  Id.

Here, TracFone submitted its petition pursuant to the process set forth by the Register in the Notice of Inquiry. That process specifically provides for interested parties to petition the Register for the consideration of new information after the specified deadline.  The Register admits that TracFone's petition was in "substantial compliance" with that rule.  Compl. ¶ 26; R.615.

The Assistant Secretary, who has a statutorily imposed consultative role in rulemaking proceedings under the Act, specifically urged that TracFone's comments be considered, so that all interested parties would be heard from and the recommendation would be made on a complete record.  Neither the Register in her recommendation nor the Librarian offered any meaningful response to the stated need for a complete record. Instead, they shared this concern.

Nevertheless, the Register rejected TracFone's Petition. Because none of the reasons offered for this refusal withstands scrutiny, it was arbitrary and capricious.  See Sierra Club v. Martin, 168 F.3d 1, 5 (11th Cir. 1999) (action is arbitrary and capricious where the agency fails to articulate a satisfactory explanation for its action).

The Register first asserted there was insufficient justification for TracFone's delay, since its trade association received notice of the proceedings in late January.  As shown above, however, imputing notice to TracFone in this fashion is legally improper.  Absent publication in the Federal Register, "actual" notice is required, and there was no delay once TracFone received actual notice.

Second, the Register stated that consideration of TracFone's submission without giving the proponents of the Exemption an opportunity to respond would be unfair to the proponents.  But the proponents _filed_ written responses to TracFone's comments.  Here, the Register's statement that this opportunity to respond did not ameliorate the prejudice to the proponents makes no sense:  the only prejudice would have been consideration of TracFone's comments without allowing the proponents to respond, but the proponents did respond.

Third, the Register suggested that accepting TracFone's comments would disrupt the rulemaking proceedings and set a bad precedent.  But the Register had already admitted that the record was "thin" and accordingly _accepted_ additional comments from the proponents.  TracFone's comments were submitted on the same day as those comments.  Given the solicitation of late-filed comments from the proponents, consideration of TracFone's comments could not possibly have disrupted the rulemaking

proceedings.  The Register certainly offered no explanation as
to how it would.

To the contrary, TracFone's comments, which amounted to
barely 15 pages of text, simply provided the other side of the
issue, thereby correcting the "thin" record regarding this
single, proposed Exemption. The proceedings had been going on
for over a year, and five months had elapsed since the public
hearings concluded.  The Register had already extended the
applicability of the exemptions enacted in the prior rulemaking
proceedings to allow additional time to rule on the proposed
exemptions.  The Register offered no suggestion that some urgent
threat to the public interest required an immediate conclusion
of the proceedings, without consideration of a more complete,
balanced record.

Likewise, consideration of TracFone's submission would not
set a bad precedent for future proceedings, in which no issue
exists as to the adequacy of the record or the sufficiency of
notice to interested parties.  In fact, the Register's position
would effectively render meaningless the very process it
provides for submitting information late, because the only
concern expressed about considering TracFone's submission would
apply to every out-of-time submission.  Yet the Register has
adopted a procedure for considering out-of-time comments, and

actually did so here for those in favor of the proposed Exemption.

Consequently, the Register did not provide a substantial, rational explanation for its refusal to accept TracFone's submission, while simultaneously accepting the submissions of others. That is the very definition of arbitrary and capricious action. See Westar Energy, 473 F.3d at 1241. As the Court explained in Green Country Mobilephone, Inc. v. FCC, 765 F.2d 235, 237 (D.C. Cir. 1985), while an agency may insist on rigid deadlines, once it agrees to allow exceptions, it must offer a rational explanation for refusing exceptions in similar cases. "A 'sometimes-yes, sometimes-no, sometimes-maybe policy of [deadlines]'" is arbitrary and capricious. Accordingly, the Exemption must be vacated. Westar, 473 F.3d at 1242.

### 3. Defendants' Arguments Should be Rejected.

#### a. The Conduct of Both Defendants is Subject to the Requirements of the APA and Due Process.

Defendants argue that the Librarian's actions are not subject to review under the APA, because the Librarian is part of "Congress," and that the actions of the Register, who conducted the rulemaking proceedings from start to finish, and whose actions admittedly are governed by the APA, are not subject to review because they do not constitute "final agency action." Def. mem. at 18-20; 17 U.S.C. ¶ 701(e) (actions by

Register under Title 17 are subject to APA). Defendants'
argument is incorrect. Although actions by the Librarian of
Congress have generally been held not subject to the APA, the
cases cited by Defendants do not shield Defendants here.

Defendants' argument that the Librarian is immune from
review under the APA rests on the notion that the Librarian is a
part of "Congress," which is expressly excluded from the
coverage of the APA. But the Librarian is not "Congress." As
the Librarian concedes in seeking to avoid TracFone's separation
of powers argument, the Librarian is appointed not by Congress,
but by the President. Def. mem. at 26-27. Nor is the Librarian
subject to removal by Congress. Id. at 27.

As Defendants also concede, when the Librarian, and the
Register, who is appointed by the Librarian, together conduct
rulemaking proceedings under the Act, they do not in any sense
act as part of Congress, but rather as "an independent agency."
Id. at 26-27. Not only does Congress not participate in
rulemaking proceedings, both Defendants conduct rulemaking
proceedings "free from the control of Congress and its members."
Id.; see Eltra Corp. v. Ringer, 579 F.2d 294, 301 (4th Cir.
1978) ("the Librarian performs certain function which may be
regarded as legislative . . . and other functions (such as the
Copyright Office) which are executive or administrative"). The
exclusion of "Congress" from the APA cannot be extended to

include the Librarian with respect to this rulemaking proceeding.

Defendants argue these facts have no bearing on whether the Librarian should be considered part of "Congress" for purposes of the APA's provision excluding "Congress" from its scope. Id. at 28. But they offer no reason that should be so. They likewise offer no authority that the Librarian is not subject to the APA when, together with the Register, who is expressly subject to the APA, the Librarian is engaged in rulemaking proceedings under the Act, which Defendants themselves admit are conducted free from any participation or control by Congress.

In all events, quite apart from the APA, parties may still challenge actions by the Librarian and the Register as unconstitutional. Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). The requirements of notice and comment imposed by the APA under these circumstances are components of due process. Mobil Oil, 881 F.2d at 199. Defendants' conduct is therefore actionable under either the APA or the Constitution.

> **b.   Defendants' Argument that They Complied with the APA and Due Process Should be Rejected.**

Defendants argue they are not required to provide individual notice to "every party that might conceivably have an interest in a rulemaking." Def. mem. at 22. TracFone does not

assert that they were.  TracFone simply asserts that Defendants
were required to publish a sufficient notice in the Federal
Register.  That would not have caused governmental "paralysis."
But, since Defendants failed to provide proper notice by
publication, actual notice to TracFone was required.

It bears emphasis that TracFone could hardly be described
simply as a party "that might conceivably" have an interest in
rulemaking.  Since its rights under the Act were cited by the
proponents as the very legal rights the proposed Exemption would
supposedly eliminate, it hardly would have "paralyzed" the
United States Government to assure – as the Assistant Secretary
urged – that this directly affected party be heard from about
this proposed Exemption.

Defendants also argue that agencies are entitled to enforce
deadlines, and declining to allow comments to be filed late does
not violate the APA or due process.  Def. mem. at 24.  Their
cited cases, however, do not involve situations where the
parties lacked notice of the proceedings until it was too late.
Nor do they involve cases where late comments were accepted from
some interested parties but not others.  That is the very
essence of arbitrary conduct.  Westar Energy, 473 F.3d at 1241.

23

c.   **If the Librarian is Considered to be Part of Congress, his Rulemaking under the Act Violates Separation of Powers.**

To avoid TracFone's APA claim, Defendants argue the Librarian is part of Congress and therefore outside the APA.  To avoid TracFone's separation of powers argument, they assert that the Librarian and Register act as an executive agency, functioning completely independent of Congress.  Based on the latter admission, TracFone's APA claim must be upheld.

In all events, Defendants cannot be allowed to have it both ways.  If Defendants are part of "Congress," and the Librarian therefore is not subject to the APA, then the Act's rulemaking provisions violate the constitutionally mandated separation of powers, whether the rulemaking is considered executive in nature or legislative in nature.

If executive, then the Act will have unconstitutionally given "Congress" the power to execute the laws.  Bowsher v. Synar, 478 U.S. 714, 714, 721-25 (1986) (Congress may play no direct role in the execution of the law).  If legislative, then the Act will have given a Congressional agency the power to legislate without bicameral passage and presentment to the President as required by Article I, section 7 of the Constitution.  INS v. Chadha, 462 U.S. 919 (1983) (law providing for one-house veto of deportation decisions constituted lawmaking without bicameral passage and presentment).

### III.  CONCLUSION

Based on the allegations of the Complaint and its exhibits, the declaration submitted and the administrative record, TracFone has demonstrated its standing to seek relief in this Court.  Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.  If, however, the Court has doubts about TracFone's standing, TracFone requests an evidentiary hearing on the issue of standing.

For the reasons set forth above, Defendants' motion to dismiss for failure to state a claim or for summary judgment should also be denied.


James B. Baldinger
Florida Bar No. 869899
CARLTON FIELDS, P.A.
222 Lakeview Avenue
Suite 1400
West Palm Beach, FL 33401
Telephone:  561 659-7070
Facsimile:  561-659-7368
E-Mail:
jbaldinger@carltonfields.com

By:  /s/ Steven J. Brodie
     Steven J. Brodie
     Florida Bar No. 333069
     John A. Camp
     Florida Bar No. 848115
     CARLTON FIELDS, P.A.
     Bank of America Tower at
     International Place
     100 Southeast Second Street
     Suite 4000
     Miami, FL  33131
     Telephone: 305 530-0050
     Facsimile: 305 530-0055
     E-Mail:
     sbrodie@carltonfields.com
     jcamp@carltonfields.com

Counsel for Plaintiff TracFone Wireless, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James C. Luh, Trial Attorney, United States Department of Justice, Civil Division, Federal Programs Branch 20 Massachusetts Ave. NW  Washington, DC  20530

/s/ Steven J. Brodie
Steven J. Brodie
Attorney