UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-cv-22942-GRAHAM

| | |
|---|---|
| TRACFONE WIRELESS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| JAMES H. BILLINGTON, Librarian of Congress, and MARYBETH PETERS, Register of Copyrights, | ) ) ) ) ) ) |
| Defendants | ) ) ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

TracFone's opposition memorandum (Pl.'s Resp. to Defs.' Mot. to Dismiss or for Summ. J.) fails to establish that TracFone has standing to challenge the exemption to be codified at 37 C.F.R. § 201.40(b)(5), or to establish a legal basis for such a challenge. TracFone lacks standing, because the effects of third-party conduct that preceded the issuance of the exemption cannot be considered traceable to the exemption, and the potential effect of the exemption on TracFone's legal position in disputes with other parties is not a concrete injury that entitles TracFone to seek relief in this Court. TracFone's claims have no legal basis, because the constitutional guarantee of due process does not incorporate the notice requirements of the Administrative Procedure Act (APA), and the procedures followed in the rulemaking would have satisfied the APA in any event. Accordingly, the Court should dismiss TracFone's complaint or, in the alternative, should grant summary judgment in favor of the defendants based on review of the administrative record.

## ARGUMENT

**I.     TracFone has not identified a judicially cognizable injury traceable to the issuance of the exemption.**

TracFone lacks standing to challenge the exemption, because it has not met its burden of establishing an injury in fact that is fairly traceable to the defendants' actions and could likely be redressed by a favorable decision, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

TracFone's allegation that third parties continue to modify TracFone handsets in ways that harm TracFone's interests (Pl.'s Resp. at 10) is not sufficient to establish standing. Injury is not enough by itself; a plaintiff must identify an injury that is fairly traceable to the challenged actions of the defendants. See Lujan, 504 U.S. at 560. In Allen v. Wright, 468 U.S. 737 (1984), for example, the Supreme Court found that the plaintiffs adequately alleged that they were suffering a present and continuing injury related to racial discrimination by private schools. See id. at 756–57. But because the plaintiffs failed to further show that the discriminatory practices were traceable to the government's issuance of tax exemptions to the schools, the plaintiffs lacked standing. See id. at 756–61. Similarly, in this case, the ongoing activities of third parties are not enough to establish standing. Activities that started before the issuance of the challenged exemption cannot possibly be traceable to the exemption. TracFone also has not established that issuance of the exemption has caused its antagonists to step up their activities, or that such an increase in those activities has caused TracFone actual harm. Indeed, it appears that TracFone has argued in its other suits that the exemption is irrelevant. (See Notice of Filing.)

TracFone also cannot claim standing based on impairment of a statutory procedural right. A plaintiff claiming standing based on a procedural violation may challenge the result of the allegedly flawed proceeding without meeting all the normal standards of redressability and immediacy. See Lujan, 504 U.S. at 572 n.7. However, the plaintiff must show that "the

procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing," an interest separate and apart from the plaintiff's abstract "interest in having the procedure observed." Id. at 573 n.8; see Sierra Club v. Johnson, 436 F.3d 1269, 1278–79 (11th Cir. 2006) (holding that a plaintiff claiming procedural injury standing must show that "the claimed violation of the procedural right caused a concrete injury in fact to an interest of the plaintiff that the statute was designed to protect"). TracFone can point to no statutory procedural requirement that was "designed to protect" the viability of its method of selling handsets at a loss with the intent of earning profits from subsequent sales of airtime and services. The only statute relevant in this case, the Digital Millennium Copyright Act, was designed to protect interests related to copyright (see Mem. of Law in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 3–4), and any advantage the DMCA may have accorded on TracFone would have been nothing more than an unintended side effect. Moreover, impairment of a procedural right can support standing only if the plaintiff can establish a causal relationship between the result of the allegedly flawed proceeding—in this case, the issuance of the exemption—and the impairment of a concrete interest. See Lujan, 504 U.S. at 573 n.8 (noting that procedural injury standing is available only if "the procedural violation endangers a concrete interest of the plaintiff"); Sierra Club, 436 F.3d at 1277, 1278–79. TracFone has not shown anything more than a speculative causal relationship between the issuance of the exemption and any potential threat to its business. (See supra p. 2; Defs.' Mem. at 13–14.)

      TracFone also asserts that it has suffered harm in the form of impairment of its litigation position in other lawsuits. (Pl.'s Resp. at 13.) However, the desire to preserve or establish a legal position for use in a parallel or future lawsuit is not a legally protected interest that can support a suit for judicial relief. Cf. Calderon v. Ashmus, 523 U.S. 740, 746–47, 749 (1998) (holding that

3

an action did not satisfy the Article III case-or-controversy requirement because it "would not resolve the entire case or controversy as to any one of [the plaintiffs], but would merely determine a collateral legal issue governing certain aspects of their pending or future suits").

TracFone also has not stated a valid request for relief. As explained in the defendants' motion to dismiss, TracFone's first two requests for relief are in fact requests for impermissible advisory relief. (Defs.' Mem. at 15–16.) TracFone argues that its third request, which seeks mandatory relief, is valid because it asks the Court to compel a ministerial function, not a discretionary function. (Pl.'s Resp. at 12 n.4.) But TracFone's complaint does not simply request that the Court order the defendants to comply with procedures; it asks the Court to compel the defendants to repeal the contested exemption—that is, it asks the Court to order the defendants to adopt a new rule whose substance is dictated by the plaintiff. (Compl. at 12.) Cf. 5 U.S.C. § 551(5) (specifying that repeal of a rule is an act of rulemaking).

TracFone has also submitted an affidavit from its president and chief executive officer, F.J. Pollak, and documents from cases filed against other parties. However, these documents do nothing to establish standing. The Pollak affidavit and the litigation documents from TracFone's other lawsuits at most establish that third parties continue to modify TracFone phones in ways that may harm TracFone. They do not satisfy TracFone's burden of showing that the third-party conduct—which started before the defendants' issuance of the exemption—can be considered traceable to the defendants' challenged acts. (See supra p. 2; Defs.' Mem. at 13–14.)

Finally, TracFone points out that the exemption's potential implications for TracFone were mentioned in the rulemaking proceedings. But this merely reflects the fact that the legislative and regulatory process is better suited than the judicial system to weigh speculative future interests of the kind that TracFone seeks to advance. See Allen v. Wright, 468 U.S. 737,

752 (1984) ("[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers."). TracFone has failed to establish a basis for invoking this Court's jurisdiction.[1]

**II.     TracFone's challenge has no legal basis, because the rulemaking procedures comported with due process and the Administrative Procedure Act.**

TracFone has also failed to show that its complaint states a valid claim upon which relief can be granted. If the plaintiff had standing, the rulemaking would be subject to review under the Due Process Clause, U.S. Const. amend. V, not the Administrative Procedure Act. In any event, the rulemaking satisfied the demands of both provisions.

**A.     Decisions of the Librarian of Congress are not subject to APA review.**

The Librarian of Congress is considered part of Congress for purposes of the APA, and his actions are therefore not subject to judicial review under the APA. See Kissinger v. Reporters Cmte. for Freedom of the Press, 445 U.S. 136, 145 (1980); see also Ethnic Employees of the Library of Cong. v. Boorstin, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). TracFone argues, however, that when the Librarian of Congress performs administrative functions, he is not considered part of Congress and his actions are subject to APA review. (Pl.'s Resp. at 21.) TracFone cites no authority that supports this interpretation, and its interpretation is at odds with Kissinger and Ethnic Employees, both of which involved situations where the Librarian of Congress was not working as an agent of Congress but was acting as a separate government authority. See Kissinger, 445 U.S. at 139–45 (Librarian acting as custodian of transcripts of former official's telephone conversations); Ethnic Employees, 751 F.2d at 1407, 1416 & n.15 (Librarian's revocation of plaintiff's status as an official employee organization under Library of

---

[1]The defendants oppose TracFone's request for an evidentiary hearing on the standing issue. TracFone has failed to even allege a basis for standing, so such a hearing would be futile, and in any event it is not clear what TracFone could accomplish through such a hearing.

Congress regulations). Whether a government body is an "agency" subject to the APA does not generally depend on the function it is performing at a given time. Cf. Soucie v. David, 448 F.2d 1067, 1073 (D.C. Cir. 1971) (holding that a government authority can be an agency under the APA even if it does not perform rulemaking or adjudication functions).

TracFone also claims that the judicial review provisions of the APA apply because the Librarian of Congress and the Register of Copyrights perform the rulemaking "together" as a single entity. (Pl.'s Resp. at 21.) This is not so; the rulemaking process is clearly a two-step process similar to the process the Supreme Court examined in Dalton v. Specter, 511 U.S. 462 (1994) (see Defs.' Mem. at 19–20): first, the Register of Copyrights makes a recommendation, then the Librarian of Congress acts on the recommendation. See 17 U.S.C. § 1201(a)(1)(C). The fact that the Librarian of Congress appoints and supervises the Register of Copyrights makes no difference. The decisionmaker in Dalton—the President—had also appointed and supervised the actors whose recommendations he acted upon—the Secretary of Defense and a presidentially appointed commission. See Dalton, 511 U.S. at 465; 10 U.S.C. § 113 (Secretary of Defense).

Finally, TracFone argues that the constitutional guarantee of due process somehow incorporates the statutory provisions of the APA. (Pl.'s Resp. at 22.) TracFone fails to cite any authority supporting this novel proposition. TracFone cites Mobil Exploration and Producing North America, Inc. v. FERC, 881 F.2d 193 (5th Cir. 1989), but that case dealt exclusively with the statutory due process demands of the APA, not with the due process demands imposed by the Constitution. See id. at 199 (citing 5 U.S.C. § 553). The headnotes to the decision in the Federal Reporter mistakenly reference the Constitution, but these headnotes are not part of the decision. See United States v. Little Rock Sewer Cmte., 460 F. Supp. 6, 8 n.2 (E.D. Ark. 1978).

It is therefore clear that if the Court had jurisdiction, its review would be based only on

the demands of constitutional due process, which does not require advance notice of the promulgation of generally applicable rules. (See Defs.' Mem. at 22.)

### B. The rulemaking process would pass muster under the APA if it applied.

The rulemaking process at issue in this case would pass muster under the provisions of the Administrative Procedure Act in any event. The APA does not require an agency to publish the specific terms of a proposed rule in the Federal Register. The agency may publish "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b). "Notice is adequate if it 'affords interested parties a reasonable opportunity to participate in the rulemaking process.'" Lloyd Noland Hosp. & Clinic v. Heckler, 762 F.2d 1561, 1565 (11th Cir. 1985) (quoting Forester v. Consumer Prod. Safety Comm'n of the U.S., 559 F.2d 774, 787 (D.C. Cir. 1977)). In this case, the Copyright Office published notice in the Federal Register announcing that the rulemaking would identify classes of works to be exempted from the § 1201(a)(1) prohibition and detailing the criteria that would be used to determine whether a particular exemption was warranted. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 70 Fed. Reg. 57,526, 57,527–30 (Oct. 3, 2005). In addition, the notice advised that the specific terms of the proposed rules would be posted on the Copyright Office Web site. Id. at 57,530. The notice afforded parties a reasonable opportunity to participate in the rulemaking process, as evidenced by the fact that a large number of parties, including opponents of the exemption, did in fact participate.

TracFone's principal case, Utility Solid Waste Activities Group v. EPA, 236 F.3d 749 (D.C. Cir. 2001), is not apposite. That decision found that the EPA's notice of proposed rulemaking was inadequate because the EPA posted its notice only on the Internet and did not issue any notice in the Federal Register before the issuance of the rule. Id. at 752, 754. In this

7

case, by contrast, the Copyright Office published notice in the Federal Register that not only contained "a description of the subjects and issues involved," as contemplated by § 553(b), but also referred interested parties to the Copyright Office Web site, where they could examine the terms of the proposed rules. It also bears noting that in other cases, the D.C. Circuit has found that publication on an agency Web site was sufficient by itself. See Gen. Motors Corp. v. EPA, 363 F.3d 442, 451 (D.C. Cir. 2004); Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin., 296 F.3d 1120, 1130 n.9 (D.C. Cir. 2002).

The other cases TracFone cites also differed from this case in critical respects. The notice held inadequate in United Church Board for World Ministries v. SEC, 617 F. Supp. 837 (D.D.C. 1985), was a "two-sentence request for comments on 'appropriate levels'" for threshold percentages for reintroduction of shareholder proposals. Id. at 839. There was no indication of what factors or criteria the SEC would examine in setting the threshold percentages. Id. In Fertilizer Institute v. U.S. EPA, 935 F.2d 1303 (D.C. Cir. 1991), the EPA crafted certain administrative exemptions to a statute without having suggested the possibility of doing so in its notice of proposed rulemaking. Id. at 1311–12. In this case, the Federal Register notice made clear from the outset that the subject of the proceedings was the creation of administrative exemptions as required by the statute. Finally, in Public Citizen, Inc. v. Mineta, 427 F. Supp. 2d 7 (D.D.C. 2006), the problem the court identified in the notice given by the agency was that the final rule adopted by the agency established a system of categorical rules, while the notice of proposed rulemaking had suggested a system of rebuttable presumptions. Id. at 16–17. In this case there was no such "switcheroo," id. at 17, from one basic structure for the rules to another, wholly different structure.

TracFone also asserts that because the Copyright Office solicited additional input after

the hearing from the two witnesses who had testified at the hearing,[2] the Copyright Office was obligated to also accept TracFone's submission. TracFone relies on <u>Westar Energy, Inc. v. FERC</u>, 473 F.3d 1239 (D.C. Cir. 2007), in which the D.C. Circuit found that the FERC's acceptance of a late filing by one utility precluded the FERC from denying another utility leave to submit a late filing. But the basis for the court's decision in <u>Westar Energy</u> was that the two utilities were in identical situations. <u>Id.</u> at 1241–43. In this case, TracFone was not in the same position as the two hearing witnesses. The two hearing witnesses had submitted written comments in compliance with the announced process, and they had testified at the hearing, so their positions had already been aired before the agency and other parties to the rulemaking. TracFone had not participated in the process at all, so other parties would not have an adequate opportunity to evaluate and respond to TracFone's arguments. (<u>See</u> Compl. Ex. D at 46–48.)

### C. TracFone fails to state a claim based on the separation of powers.

TracFone's only argument based on the constitutional separation of powers is that because the Librarian of Congress is considered part of Congress under the APA, he must also be considered part of Congress for separation-of-powers purposes. (Pl.'s Resp. at 24.) As the defendants explained in their memorandum of law, the second proposition does not follow from the first. (Defs.' Mem. at 28.) The APA, despite its pervasive scope, is ultimately only a statute. The statutory classifications made in 5 U.S.C. §§ 551(1) and 701(b)(1) do not affect how government authorities are categorized for purposes of the Constitution.

### D. Summary judgment is appropriate in a case seeking review of administrative action in which the plaintiff is not entitled to discovery.

---

[2]Posthearing communications of this kind are permitted in informal rulemaking. <u>See</u> <u>Action for Children's Television v. FCC</u>, 564 F.2d 458, 477 (D.C. Cir. 1977); <u>cf.</u> <u>Sierra Club v. Costle</u>, 657 F.2d 298, 391 & n.455 (D.C. Cir. 1981) (review under the Clean Air Act).

TracFone also argues that summary judgment is not appropriate because the plaintiff has not conducted discovery. (Pl.'s Resp. at 3.) In a challenge to administrative action based on the record compiled by the agency, discovery is not appropriate. See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1246–47, 1250 (11th Cir. 1996) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). Consequently, the Court may grant summary judgment under Rules 12(b) and 56 of the Federal Rules of Civil Procedure without first ordering discovery. The defendants would be entitled to summary judgment, because the plaintiff's claims have no basis in law.

## CONCLUSION

For the reasons stated above and in the defendants' memorandum of law, the Court should dismiss TracFone's complaint for lack of jurisdiction or for failure to state a claim. In the alternative, the Court should grant summary judgment in favor of the defendants.

Dated: March 5, 2007　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　PETER D. KEISLER
　　　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　　　R. ALEXANDER ACOSTA
　　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　　THEODORE C. HIRT
　　　　　　　　　　　　　　　　　　　　　　Assistant Branch Director

　　　　　　　　　　　　　　　　　　　　　　/s/ JAMES C. LUH
　　　　　　　　　　　　　　　　　　　　　　JAMES C. LUH
　　　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　　　　20 Massachusetts Ave NW
　　　　　　　　　　　　　　　　　　　　　　Washington DC 20530
　　　　　　　　　　　　　　　　　　　　　　Tel: (202) 514-4938
　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 616-8460
　　　　　　　　　　　　　　　　　　　　　　E-mail: James.Luh@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 5, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


/s/ JAMES C. LUH
JAMES C. LUH

**SERVICE LIST**

Case No. 06-cv-22942-GRAHAM

Steven J. Brodie
Carlton Fields
4000 International Place
100 SE 2nd St
Miami FL 33131-2114
Tel: (305) 530-0050
Fax: (305) 530-0055
E-mail: sbrodie@carltonfields.com

John A. Camp
Carlton Fields
4000 International Place
100 SE 2nd St
Miami FL 33131-2114
Tel: (305) 530-0050
Fax: (305) 530-0055
E-mail: jcamp@carltonfields.com

James B. Baldinger
Carlton Fields
222 Lakeview Ave Ste 1400
West Palm Beach FL 33401-6149
Tel: (561) 659-7070
Fax: (561) 659-7368
E-mail: jbaldinger@carltonfields.com
Attorneys for Plaintiff TracFone Wireless, Inc.

James C. Luh
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorney for Defendants James H. Billington and Marybeth Peters