IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-cv-22942-GRAHAM/O'SULLIVAN

| | |
|---|---|
| TRACFONE WIRELESS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES H. BILLINGTON, LIBRARIAN OF CONGRESS and MARYBETH PETERS, REGISTER OF COPYRIGHTS, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff TracFone Wireless, Inc. submits this memorandum in support of its motion for summary judgment.

In rulemaking proceedings under the Digital Millennium Copyright Act, Defendants considered a proposed rule (the "Exemption") that was expressly aimed at taking away TracFone's ability to obtain injunctive relief under the Act. They did so without TracFone's knowledge and without providing actual or constructive notice to TracFone. When TracFone sought to be heard, they rejected TracFone's comments as "untimely," despite having requested and considered additional, out-of-time comments from the Exemption's proponents.

This conduct violated the notice requirements of the Administrative Procedure Act and constitutional due process.

If, however, Defendants are allowed to avoid the requirements of the APA on the basis that the Librarian should be considered to be part of "Congress," and therefore excluded from the APA's coverage, then the rulemaking proceedings violated the constitutionally-required separation of powers.

Many of the issues relevant to this motion were briefed in connection with Defendants' motion to dismiss or for summary judgment. While some repetition is unavoidable, TracFone will offer only abbreviated argument on these points. TracFone also will address points it anticipates Defendants will raise in response to this motion, just as Defendants did in reply to TracFone's opposition to their motion for summary judgment. In this way, the Court will be completely briefed on the issues raised by the parties' respective motions for summary judgment.

## ARGUMENT

### A. Defendants Violated the APA and Due Process.

#### 1. Defendants did not Publish Proper Notice in the Federal Register.

The APA requires that notice (1) be published in the Federal Register, <u>not</u> merely on the agency's website, <u>and</u> (2) set forth the text of the proposed rule or at least its subject matter and indicate the direction that <u>the agency</u> contemplates going in the rulemaking proceeding, <u>not</u> simply the direction suggested by commenters. <u>See</u> Plaintiff's Response to

2

Defendants' Motion to Dismiss or for Summary Judgment [D.E. 20] at 13-14, 16 (citing cases).

The procedures Defendants employed here fell short of the requirements under the authorities set forth above. The Notice of Inquiry published in the Federal Register did not provide the text of any proposed rule with respect to cellular telephones, nor did it disclose an intent to consider exempting the circumvention of locks protecting cellular telephones.[1]

Instead, that Notice of Inquiry only <u>solicited proposals</u> for subject areas for rulemaking. Such open-ended requests for comments do not provide constructive notice. <u>United States Church Board for World Ministries v. SEC</u>, 617 F. Supp. 837, 837-41 (D.D.C. 1985)(notice inviting comment that did not indicate agency's "proposed direction" was not constructive notice).

Neither the Notice of Inquiry nor the subsequent Notice of Public Hearing provided the <u>substance</u> of the proposed Exemption or <u>Defendants'</u> own view of it. <u>See</u>, R.1, R.7. They merely referred readers to comments of others posted on the agency's website. But "[o]nly publication in the Federal Register meets

---

[1] Indeed, prior to the publication of the Exemption upon its enactment in November 2006, there was nothing in the Federal Register relating to this rulemaking proceeding, or to either of the previous two exemption proceedings in 2000 and 2003, to even suggest that any exemption related to wireless phones might be considered. Previously granted exemptions all dealt with classes of works ranging from computer programs, DVDs, and video games to websites blocked by filtering software, printer toner cartridge microchips, and literary works published in ebooks.

the APA requirement of constructive notice." Rodway v. U.S. Dep't of Agriculture, 514 F.2d 809, 815 (D.C. Cir. 1975). Internet notice is not sufficient. Utility Solid Waste Activities Group v. EPA, 236 F.3d 749, 754 (D.C. Cir. 2001). Nor is notice gleaned from comments to the agency. Fertilizer Institute v. EPA, 935 F.2d 1303, 1312 (D.C. Cir. 1991); Public Citizen v. Mineta, 427 F. Supp. 2d 7, 14 (D.D.C. 2006).

Interested parties are not required to predict from diverse proposals of the public published on the Internet what rules might be adopted by the agency. Yet here, the agency did not publish before the hearings, even on its website, the terms of any exemptions it proposed to adopt or even its thinking about the comments. The recommendation of the Register was published on the agency website only after the close of the comment period and the conclusion of the hearings. Only then was a statement of the agency's thinking with respect to proposed rules made available on that website, although still not in the Federal Register.

TracFone has found no case holding that notice on a website is sufficient. Neither of the two cases Defendants cited in their summary judgment reply (D.E. 26, at 8) involved rulemaking promulgating new substantive regulations, such as here. Instead, they involved agency interpretations of existing

4

regulations, which do not require notice and comment under the APA.

In short, TracFone received no notice or opportunity to comment, even though the Exemption's proponents cited TracFone's requests for injunctions as the very thing they sought to curtail, and the Copyright Office itself expressed concern about the Exemption's impact on TracFone.

### 2. Defendants' Refusal to Consider TracFone's Late Submission, While Considering Late Submissions of Proponents, was Arbitrary and Capricious.

Almost five months after the hearings, the Copyright Office solicited further comments from proponents of the Exemption. Because the record was "thin," the Copyright Office needed more input to make its recommendation. Two proponents submitted a 13 page response complaining of an injunction obtained by TracFone under the Act, while arguing that no harm would come to TracFone as a result of the Exemption. Certain opponents noted only that wireless industry representatives were submitting a response.

On the same day as the proponents submitted their response, TracFone submitted its petition, offering responses to the Copyright Office's questions and further comments. The Register and the Librarian refused to consider TracFone's comments, while accepting the untimely comments of the proponents. This was arbitrary and capricious. Westar Energy, Inc. v. FERC, 473 F.3d 1239, 1241 (D.C. Cir. 2007) (extending deadline for one party,

5

while refusing to do so for another similarly situated party, is "'the quintessence of arbitrariness and caprice'").

The commenters who were allowed to submit untimely comments were situated just like TracFone with respect to the scheduled deadline for comments, and they should not have been afforded preferential treatment. Although they had previously submitted comments and testimony, that is irrelevant to the reason Defendants refused to hear TracFone's comments. Defendants' assertion that it would be prejudicial to the process to receive comments after the stated deadline would apply equally to those whose out-of-time comments were accepted. Thus, that rationale provides no basis to treat TracFone differently. If anything, there is <u>less</u> reason to accept additional comments from persons who had already been heard from, but not from those at whom the proposed Exemption was aimed.

Defendants also asserted that the other commenters would not have an adequate opportunity to respond to TracFone's comments. In fact, they had an opportunity to respond and did so. Consequently, there would have been no prejudice to them from allowing TracFone's comments to be heard, while there was severe prejudice to TracFone from the denial.

Defendants, therefore, provided no rational explanation for their refusal to accept TracFone's untimely submission, while simultaneously accepting the untimely submissions of others.

That disparate treatment was arbitrary and capricious. See Westar Energy, 473 F.3d at 1241. While an agency may insist on rigid deadlines, once it agrees to allow exceptions, it must offer a rational explanation for refusing exceptions in similar cases. Green Country Mobilephone, Inc. v. FCC, 765 F.2d 235, 237 (D.C. Cir. 1985). "A 'sometimes-yes, sometimes-no, sometimes-maybe policy of [deadlines]'" is arbitrary and capricious. Id.

### 3. The Conduct of the Librarian is Subject to the Requirements of the APA as Well as Due Process.

The proper starting point for any question of statutory interpretation is the language of the statute itself. Where, as here, the statute is unambiguous, its language is the ending point for judicial inquiry as well. Harris v. Garner, 216 F.3d 970, 972-73 (11th Cir. 2000) (en banc); see also CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001) (same; court must presume Congress meant what it said and said what it meant).

The APA broadly defines the "agencies" within its scope as including "each authority of the Government of the United States." 5 U.S.C. § 551(1). Under this all-encompassing phrase, the conduct of the Librarian of Congress is subject to the APA's requirements. The APA does contain an exception for "Congress." 5 U.S.C. § 551(1)(A). But "Congress" is the Senate

7

and the House. See U.S. Const. Art. I, § 1 ("All legislative Powers . . . shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives"). The Librarian of Congress is not "Congress." To the contrary, by law, the Librarian renders service to "Congress." See, e.g., 2 U.S.C. § 166 (Librarian required to assist Congressional Research Service in rendering service to Congress).

Had Congress intended to exempt from the APA all governmental entities classified within the legislative branch, it easily could have said so. Congress knows how to refer to the "legislative branch" or to entities within the "legislative branch" when it wishes to do so. See, e.g., 2 U.S.C. § 60q; 2 U.S.C. § 1381. That it chose not to do so here is dispositive.[2]

Stretching the APA's exclusion of "Congress" to exclude the actions of the Librarian at issue here would be particularly unjustified. First, as Defendants correctly point out in seeking to avoid TracFone's separation of powers claim (discussed below), rulemaking proceedings under the Act are

---

[2] Moreover, as to the proceedings here, a prominent authority on copyright law has explained that the legislative history of the Act itself shows Congress intended the rulemaking proceedings pursuant to that Act to be reviewable under the APA. See D. Nimmer, A Riff on Fair Use in the Digital Millennium Copyright Act, 148 U. Penn. L. Rev. 673, 694, 698 (2000).

8

similar to rulemaking proceedings conducted by executive agencies, free from Congressional control or participation. Second, the Act requires that the Librarian promulgate rules upon the recommendation of the Register, 17 U.S.C. § 1201(a)(1)(C), and Congress has expressly made the Register subject to the APA. 17 U.S.C. § 701(e). Third, while the Register does not make the final decision, in practice the Librarian accepts the Register's recommendations virtually immediately, just as it did here.[3] Finally, Defendants cannot be allowed to have it both ways by arguing, on the one hand, that the APA's exclusion for "Congress" protects the Librarian, while arguing on the other hand that the Librarian's actions were "executive" in nature and, hence, TracFone's separation of powers argument should be rejected.

In seeking to avoid the APA's requirements, Defendants have cited Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 145 (1980) and Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405 (D.C. Cir. 1985). Those decisions do not apply to this very different case.

---

[3] See U.S. Copyright Office website, Anticircumvention Rulemaking, http://www.copyright.gov/1201 (last visited Apr. 3, 2007). In the 2003 Rulemaking, for example, the Librarian's approval came one day after the Register's recommendation. In the rulemaking at issue here, the Register's recommendation was made on November 17, 2006 and approved by the Librarian one business day later.

In Kissinger, the Supreme Court merely noted the trial court's statement that the Library of Congress was not an "agency" for purposes of the Freedom of Information Act. 445 U.S. at 145. But as the district court opinion in Kissinger makes clear, the plaintiff had conceded that the Library of Congress was not subject to FOIA. See Reporters Comm. for Freedom of the Press v. Vance, 442 F. Supp. 383, 385 n.5 (D.D.C. 1977). Accordingly, this observation by the Court was dictum, in a different context. Furthermore, there the Librarian was carrying out its function of creating a repository for books and documents for the use of Congress. See Library of Congress website, http://www.loc.gov/about/history/pdfs/04-08StrategicPlan23-49.pdf (last visted Apr. 3, 2007) (listing as the Library's "Goal 1" "Build[ing] and preserv[ing] a comprehensive collection of knowledge and creativity in all formats and languages for use by the Congress and other customers"). That is totally unlike this rulemaking proceeding.

Ethnic Employees involved an employment dispute with the Librarian of Congress. There is no information in the decision as to the capacity or positions occupied by the employees, and they may have been involved in activities directly related to the Librarian's services to Congress. Furthermore, the court cites no support for its refusal to apply the APA to that dispute, except the dictum from Kissinger. In all events, like

10

Kissinger, Ethnic Employees did not involve rulemaking proceedings such as those at issue here.

There is no basis under Eleventh Circuit law for extending Ethnic Employees to the very different context presented here, and this Court should not do so. Although "Congress" is excluded from the APA, the conduct of the Librarian at issue involved, by Defendants' own admission, actions that were executive in nature and independent of Congressional control. The APA is fully applicable to the Librarian's actions. Cf. Soucie v. David, 448 F.2d 1067, 1073 (D.C. Cir. 1971) (even if entities within Office of the President were outside APA, Office of Science and Technology that did not merely advise and assist the President, but rather exercised independent function of evaluating federal programs was not).

Finally, the requirements of notice under these circumstances are components of due process. Mobil Exploration & Producing N. Am., Inc. v. FERC, 881 F.2d 193, 199 (5th Cir. 1989) (when new rules are established by rulemaking, due process requires notice reasonably calculated to inform those whose legally protected interests may be affected) (citing North Alabama Express, Inc. v. United States, 585 F.2d 783, 786 (5th Cir. 1978)). Accordingly, Defendants' failure to provide notice may be challenged as unconstitutional. See Ethnic Employees, 751 F.2d at 1416 n.15.

B.  **The Act's Rulemaking Provisions Violate Separation of Powers Principles.**

If Defendants' actions can escape APA review under the exclusion of "Congress" from its scope, then the Act's delegation of rulemaking authority to Defendants violates the constitutional requirement of separation of powers. The powers exercised by Defendants under the Act are either executive or legislative.

If Defendants' characterization of the Librarian as part of "Congress" is accepted, then the Act's rulemaking provision involves either (1) an unconstitutional exercise by the legislative branch of an executive function, or (2) the delegation to an agency of Congress the authority of Congress as a body to enact law, free from the constraints of bicameral passage and presentment to the President. See Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 276 (1991) (if power was executive, it could not be exercised by agency of Congress; if power was legislative, it could not be exercised without bicameralism and presentment). Either way, rulemaking by the Librarian would be unconstitutional.

1.  **Unconstitutional Exercise of Executive Power**

The Constitution does not permit "Congress" to execute the laws; consequently, Congress cannot give to an agent under its

12

influence the power to execute laws that it does not itself have. See Bowsher v. Synar, 478 U.S. 714, 721-725, 726 (1986). Otherwise, Congress would be circumventing the "carefully crafted [separation of power] restraints spelled out in the Constitution." INS v. Chadha, 462 U.S. 919, 959 (1983).

The exercise of rulemaking by the Librarian to implement the Act by defining those classes of works to be exempted from its prohibitions is, TracFone submits, an executive function. Bowsher, 478 U.S. at 732-33 (the exercise of judgment concerning facts that affect the application of the law are executive in nature); Consumer Energy Council of Am. v. FERC, 673 F.2d 425, 471 (D.C. Cir. 1982) (rulemaking is substantially a function of administering and implementing public law), aff'd, 463 U.S. 1216 (1983)..

If, however, Defendants' argument that the Librarian is deemed to be part of "Congress," is accepted, then the Act's provision for rulemaking relating to exemptions impermissibly places an executive function under legislative control. The Librarian's encroachment into an executive arena would violate the Constitutional separation of powers doctrine.

### 2. Unconstitutional Exercise of Legislative Power Without Bicameral Passage and Presentment

If, on the other hand, this rulemaking is legislative in nature, then the exercise of such power by Defendants would be

unconstitutional as an exercise of legislative power without bicameral passage and presentment to the President for signature as required by Article I, section 7 of the United States Constitution. See Chadha, 462 U.S. at 945-59 (law providing for one-house veto of Attorney General deportation decisions was unconstitutional as lawmaking without bicameral passage and presentment).

Determinations of policy that alter the legal rights of persons outside the legislative branch are legislative in character and effect. Chadha, 462 U.S. at 951. Such actions require passage by both houses of Congress and must be signed by the President. Id. at 947-51; Bowsher, 478 U.S. at 752-754 (Stevens, J., concurring in the judgment) (policy decisions that have the force of law require bicameral passage and presentment).

If Defendants' rulemaking authority under the Act is "legislative in character and effect," and if, as Defendants argue in an effort to avoid the APA's requirements, the Librarian of Congress should be considered a part of "Congress," then there must be bicameral passage and presentment to the President, because legislative power is being exercised by the legislative branch. "If Congress were free to delegate its policymaking authority to one of its components, or to one of its agents it would be able to evade 'the carefully crafted

restraints spelled out in the Constitution.'" <u>Bowsher</u>, 478 U.S at 756 (Stevens, J., concurring in the judgment). In that event, the rulemaking provisions of the Act, as a delegation of legislative authority to the Librarian and the Register, lesser agencies within the legislative branch, would be unconstitutional.

C.  **<u>TracFone has Standing to Bring this Action.</u>**

Finally, TracFone has standing to bring this action. In a procedural injury case like this, the plaintiff need only show a "reasonable probability" that the procedural violation will "threaten" a concrete interest, i.e., a particularized interest that distinguishes the plaintiff from others who merely have a general or abstract interest in the government's compliance with proper procedure. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 572 n.7 and 573-6 & n.8 (1992). The plaintiff need not show that the agency's ultimate decision would be different if the procedural violation is corrected, nor that a new and different decision would in fact prevent actual harm to the plaintiff. <u>Id.</u> at 573 n.7; <u>Sierra Club v. Johnson</u>, 436 F.3d 1269, 1279 (11th Cir. 2006) (standing established where proper procedures "could have" led to additional public input that "could have" led to improvements in permit).

In seeking dismissal based on standing, Defendants claimed TracFone cannot show it has statutory rights protecting its

concrete interests, which Defendants describe as TracFone's "method of selling handsets at a loss with the intent of earning profits from subsequent sales of airtime and services." Specifically, Defendants argue that the Act is not designed to protect TracFone's interests, but only interests "related to copyright." Contrary to the implication of Defendants' argument, the Act does protect TracFone's right to prohibit the disabling of its proprietary software.

In fact, injunctions against such conduct have been entered for TracFone by courts, including this one, based on the Act.[4] Defendants cite no case holding that the conduct that has been the subject of those injunctions is outside the coverage of the Act, or that TracFone lacks standing to seek injunctive relief under the Act. The very reason the proponents sought enactment of the Exemption was to change the status quo by excluding such conduct from the prohibition of the Act, so that such conduct could no longer serve as the basis for injunctive relief.

Furthermore, TracFone's interest goes well beyond a merely abstract, theoretical, or generalized interest in having the Defendants follow proper procedures. TracFone is not merely a citizen interested in good government. TracFone has a

---

[4] Although an injunction has been entered after the Exemption, it was uncontested in that case. In all events, it remains uncertain whether other courts will enter such injunctions, given the Exemption directed at this remedy.

particularized interest in the outcome of the rulemaking proceeding because the proponents of the Exemption cited TracFone's injunction requests as the target of the Exemption. The Copyright Office expressed concerns about the potential for harm to TracFone's business from the Exemption.

As such, TracFone had a concrete interest in the outcome of the rulemaking proceedings that is protected by the APA's notice requirements. See Paulsen v. Daniels, 413 F.3d 999, 1004-05 (9th Cir. 2005) (violation of APA notice and comment requirements in rulemaking threatened prisoners' concrete interests where rule would render them ineligible for sentence reduction); Dismas Charities, Inc. v. U.S. Dep't of Justice, 401 F.3d 666, 677-78 (6th Cir. 2005) (procedural requirements of APA protected concrete interests of party in operating correctional facilities for bureau of prisons).

TracFone further has shown a sufficient relationship between the procedurally flawed proceeding and the impairment of its interests. The Exemption's proponents touted it precisely because it would purportedly curtail TracFone's ability to pursue injunctive relief under the Act.

Lujan does not hold that procedural injury is available only upon a showing that the plaintiff's concrete interests actually will be harmed, but rather requires only that its interests be put in danger. 504 U.S. at 573 n.8; see also

Massachusetts v. EPA, No. 05-1120, 2007 WL 957332, slip op. at 14 (U.S. Apr. 2, 2007)(party has standing to vindicate procedural right if there is possibility that requested relief will prompt party alleged to have caused harm to reconsider its decision). The potential impact the Exemption was intended to impose upon TracFone is no more speculative than the causal connections recognized as sufficient in cases where standing is found based on procedural rights. See Sierra Club, 436 F.3d at 1279; Johnson v. AllSteel, Inc., 259 F.3d 885, 888 (7th Cir. 2001) (ERISA amendment giving administrator more discretion rendered employees' benefits "less solid" and was injury allowing challenge to amendment).

Defendants presumably will argue once again that the only harm to TracFone is the impairment of its litigation position in future lawsuits, and that this is insufficient to confer standing under Calderon v. Ashmus, 523 U.S. 740 (1998). Calderon, however, did not involve a procedural injury. There, the plaintiff sought a substantive declaration of the applicability of the law to him.

In contrast, TracFone is not asking this Court to determine now whether the Exemption would apply to it as a substantive matter in some future lawsuit. TracFone instead complains of violations of the procedures used in the enactment of the Exemption itself. A ruling from this Court determining that the

18

procedures were improper and invalidating the Exemption on that ground will both redress the procedural injury that TracFone has suffered, and create a reasonable probability of preventing harm to TracFone's concrete interests. Under the authorities discussed above, that is sufficient.

Finally, the relief Tracfone seeks -- a declaration of the invalidity of the Exemption -- is perfectly appropriate. TracFone is not asking the Court to tell the Defendants to reach a particular decision on the merits of the Exemption should they engage in procedurally proper further rulemaking once the Exemption is invalidated.  TracFone only asks that its procedural rights be vindicated.  It certainly has standing to seek that relief from this Court.

## CONCLUSION

TracFone's motion for summary judgment should be granted.

| | |
|---|---|
| James B. Baldinger<br>Florida Bar No. 869899<br>CARLTON FIELDS, P.A.<br>222 Lakeview Avenue<br>Suite 1400<br>West Palm Beach, FL 33401<br>Telephone:  561 659-7070<br>Facsimile:  561-659-7368<br>E-Mail:<br>jbaldinger@carltonfields.com | /s/ Steven J. Brodie<br>By:  Steven J. Brodie<br>Florida Bar No. 333069<br>John A. Camp<br>Florida Bar No. 848115<br>CARLTON FIELDS, P.A.<br>Bank of America Tower at<br>International Place<br>100 Southeast Second Street<br>Suite 4000<br>Miami, FL  33131<br>Telephone: 305 530-0050<br>Facsimile: 305 530-0055<br>E-Mail:<br>sbrodie@carltonfields.com<br>jcamp@carltonfields.com |

Counsel for Plaintiff TracFone Wireless, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James C. Luh, Trial Attorney, United States Department of Justice, Civil Division, Federal Programs Branch, 20 Massachusetts Ave. NW  Washington, DC  20530

/s/ Steven J. Brodie
Steven J. Brodie
Attorney