## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-cv-22942-GRAHAM

```
                                    )
TRACFONE WIRELESS, INC.,            )
                                    )
             Plaintiff,             )
       vs.                          )
                                    )
JAMES H. BILLINGTON, Librarian of   )
     Congress, and                  )
MARYBETH PETERS, Register of        )
     Copyrights,                    )
                                    )
             Defendants             )
                                    )
```

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

TracFone has failed to establish that it is entitled to summary judgment in this action, for three independent reasons.

TracFone lacks standing to invoke this Court's jurisdiction. TracFone has failed to demonstrate an injury traceable to the defendants' actions: TracFone's claims of potential threats to its business merely describe speculative harms that, if they materialized, would only be traceable to the independent actions of third parties. Harm to TracFone's ability to prevail in lawsuits against third parties is not a judicially cognizable interest that can support standing. TracFone has also failed to state a valid request for relief that could redress its supposed injuries. These flaws are fatal to TracFone's standing under either a conventional Article III analysis or a procedural-injury analysis. Procedural-injury standing is also unavailable because the relevant section of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201, does not authorize

a special category of lawsuits by parties who, like TracFone, employ technological protection measures for reasons not related to copyright.

In addition, TracFone has not stated a valid claim for relief. The terms of the Administrative Procedure Act do not apply to the Librarian of Congress, because the Librarian is not an "agency" for purposes of the APA. TracFone has no claim under the Due Process Clause of the Constitution, because due process does not require advance notice of the issuance of generally applicable rules. The § 1201 exemption scheme does not violate the separation of powers, because Congress and its members exert no direct control over the § 1201 rulemaking.

Finally, even if the Court were to reject the defendants' legal arguments, TracFone still should be denied summary judgment. Viewing TracFone's evidence in the light most favorable to the defendants, a finder of fact could conclude that TracFone had not met its burden of establishing facts relevant to standing, such as whether the exemption has a sufficient material effect on TracFone's business, and facts relevant to the TracFone's legal claims, such as whether TracFone had actual notice of the rulemaking proceedings.

## ARGUMENT

### I.   TracFone has not established standing under either the conventional Article III analysis or the procedural-injury analysis.

#### A.   TracFone has failed to establish injury in fact, causation, and redressability.

TracFone has not met its burden of establishing the "irreducible constitutional minimum" of standing—a concrete injury in fact that is traceable to the defendant's actions, not the actions of third parties, and that is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

TracFone has repeatedly changed its position on precisely what injury underlies its standing in this action. None of TracFone's various claims of injury can establish standing.

TracFone initially claimed that it has standing based on a potential future increase in third-party activities that, according to TracFone, involve bypassing technological locks that TracFone employs to prevent consumers from using TracFone handsets on other networks. TracFone claims these activities can harm TracFone's business interests. (See Compl. at 2.) But this purported injury is based solely on what "could" "potentially" occur if third parties react to the exemption in the way that TracFone describes and with the material consequences that TracFone anticipates. (Compl. at 2.) This sort of speculation does not satisfy the requirement that the plaintiff demonstrate harm that is "'actual or imminent, not "conjectural" or "hypothetical,"'" id. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

In addition, if these harms were to materialize, they would be the result of "the independent action of some third party not before the court" and would not be traceable to "the challenged action of the defendant." Id. (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)); see also id. ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed."); Allen v. Wright, 468 U.S. 737, 756–61 (1983) (finding that even though the plaintiffs adequately alleged injuries related to racial segregation, they lacked standing because they had not established that private schools' discriminatory practices were traceable to the government's issuance of tax exemptions to those schools).

Most recently, TracFone has asserted that its standing is based on a threat the exemption poses to TracFone's purported copyright interests. (See Tr. of Hr'g on Mots. at 15.) However, like the potential harm to the viability of TracFone's business, this is merely a "conjectural" or "hypothetical" injury that cannot support standing. TracFone has not presented any allegations or evidence suggesting that third parties will necessarily react to the issuance of the exemption by

3

initiating efforts to unlawfully duplicate TracFone's software or otherwise undermine TracFone's purported copyright interests. Indeed, by its plain terms, the exemption applies only "when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network." Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 71 Fed. Reg. 68,472, 68,480 (Nov. 27, 2006) (to be codified at 37 C.F.R. § 201.40(b)(5)).

TracFone has also claimed that the concrete interest at stake in this litigation is its ability to pursue injunctive relief against third parties. (See Pl.'s Resp. to Defs.' Mot to Dismiss or for Summ. J. at 13.; Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. at 16; Tr. of Hr'g on Mots. at 17.) However, the desire to preserve or establish a legal position for use in other lawsuits is not a concrete interest that can support a suit for judicial relief. In Calderon v. Ashmus, 523 U.S. 740 (1998), a prisoner brought a class action seeking a declaratory judgment on an issue of statutory interpretation. Id. at 743. The prisoner asserted that the interest at stake in the litigation was his ability to obtain federal habeas corpus relief, and the Supreme Court recognized that a declaratory judgment would leave the prisoner "better able to know . . . the time limits that govern the habeas action." Id. at 746. But the Court held that the declaratory judgment action itself did not present an Article III case or controversy. Id. at 747; see also Spencer v. Kemna, 523 U.S. 1, 14–16 (1998) (holding that the possibility that a parole revocation could be used against the petitioner in future proceedings did not amount to a concrete injury for purposes of Article III). Similarly, in this case, the fact that an advisory opinion in this case might help the plaintiff obtain injunctions against third parties in other cases does not create a controversy.[1]

---

[1]The fact that TracFone also claims standing based on a procedural injury (see Pl.'s Mem. of Law at 18) makes no difference. Procedural-injury standing must ultimately be founded in a concrete injury that can support standing. See infra pp. 7–8.

TracFone also has not satisfied the redressability requirement of standing, because it has not stated a valid request for relief. The relief that TracFone has requested in this action (see Compl. at 12) would exceed the authority of the Court. First, a declaration of invalidity would not resolve any present controversy between the parties. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479 (1990); MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 770–71 (2007); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990). Nor could an injunction be issued barring the defendants from implementing, enforcing, or applying the exemption, because, given that the exemption has full effect without further action by the Librarian or the Register, 17 U.S.C. § 1201(a)(1)(D), such an injunction would be an empty gesture. Finally, the Librarian and the Register could not be ordered to repeal the exemption, because such an order would exceed the authority of the Court by commanding the Librarian to take a specific rulemaking action whose substance is dictated by TracFone. See Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 63–64 (2004); Pan. Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317–18 (1958).

Finally, the fact that a party in another case has raised the exemption as an affirmative defense (see TracFone's Notice of Filing Defs.' Answer in TracFone Wireless, Inc. v. Iser et al. (dkt. no. 36)) does not create standing. New developments after a complaint is filed cannot create standing where it was previously lacking. See Defenders of Wildlife, 504 U.S. at 569–70 n.4 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989))). Furthermore, developments in another case do not create a controversy in this case, whose outcome would not be binding on the parties to the other case. In addition, TracFone itself claims that the conduct at issue in its other cases does not fall within the terms of the exemption. (See TracFone's Notice of Filing (dkt. no. 24) at 1; see also Notice of Filing (dkt. no. 36) at 1).

**B.      TracFone cannot establish procedural-injury standing, because the DMCA does not extend standing, and TracFone has failed to show that the exemption poses a concrete threat to its interests.**

TracFone also cannot assert the "procedural injury" standing available when Congress explicitly authorizes suit based on the government's failure to observe certain procedures. Congress has not specifically authorized suits by parties in TracFone's position, and in any event, a plaintiff asserting procedural-injury standing must still show an actual threat to its interests, as opposed to merely a speculative threat.

Procedural-injury standing requires the plaintiff to show that Congress intended to extend standing to persons in the plaintiff's position. See Massachusetts v. EPA, 128 S. Ct. 1438, 1453 (2007) ("In exercising [the power to create procedural-injury standing], Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." (quoting Defenders of Wildlife, 504 U.S. at 580 (Kennedy, J., concurring))). This requirement has two components. First, the plaintiff must identify an express statutory provision that specifically authorizes the plaintiff to sue based on procedural violations. See id. ("[Statutory] authorization is of critical importance to the standing inquiry."); Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1173 (11th Cir. 2006). In Massachusetts v. EPA, for example, the express statutory authorization was located at 42 U.S.C. § 7607. See Massachusetts v. EPA, 128 S. Ct. at 1453. TracFone has not satisfied this requirement of procedural-injury standing, because the DMCA contains no provision authorizing suits challenging the Librarian's determinations under § 1201. The APA's general authorization of suit, 5 U.S.C. § 702, also does not authorize review of the DMCA rulemaking, because the Librarian of Congress, the final decisionmaker under § 1201, is not an "agency" for purposes of the APA, see infra section II.A.

The second component of the Congressional-intent analysis requires the plaintiff to show

that the interests it asserts are within the zone of interests Congress intended to protect when Congress enacted the statute.[2] It is not enough for TracFone to simply show that its technology falls within the coverage of the § 1201 anticircumvention provision. TracFone must further show that the advantage it obtained from the statute's protection was part of Congress's purpose in enacting the statute—that is, that the statute was designed to protect TracFone's interests. For example, in Sierra Club v. Johnson, 436 F.3d 1269 (11th Cir. 2006), and Ouachita Watch League v. Jacobs, 463 F.3d 1163 (11th Cir. 2006), which both dealt with environmental regulation, the Eleventh Circuit examined whether the plaintiffs had asserted environmental interests. Sierra Club, 436 F.3d at 1279; Ouachita Watch League, 463 F.3d at 1173 ("[S]ince the injury alleged is environmental, it falls within the zone of interests protected by NEPA (via the APA).") In this case, TracFone has not shown that Congress intended the DMCA to protect the interests of mobile phone providers who employ technological locks to prevent consumers from using their handsets on competitors' networks.

Even if TracFone could adequately show a Congressional intent to authorize suit, procedural-injury standing still requires that the plaintiff prove the ordinary elements of standing—injury in fact, causation, and redressability—with respect to the outcome of the allegedly flawed proceedings. When Congress has authorized suit, the requirements of standing are relaxed in that the plaintiff does not have to show that "if he had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result." Massachusetts v. EPA, 127 S. Ct. at 1453 (quoting

---

[2]A broadly written provision authorizing suit can "expand the zone of interests" and confer standing on parties whose interests are not related to the overall purpose of the statute in question. See, e.g., Bennett v. Spear, 520 U.S. 154, 164–65 (1997). However, since the DMCA contains no provision authorizing suit, this principle is not relevant in this case.

Sugar Cane Growers Coop. of Fla. v. Veneman, 289 F.3d 89, 94–95 (D.C. Cir. 2002)). In this case, this means that TracFone has to show a "reasonable probability" that the Librarian would have rejected the exemption if the Librarian and Register had considered TracFone's comments. However, TracFone still must satisfy the ordinary standards of Article III in establishing a causal link between the ultimate "substantive result" of the proceeding—in this case, the issuance of the exemption—and some actual injury to a separate concrete interest. In other words, Congressional authorization only relaxes the burden of showing a definite link between the alleged procedural error and the government's decision. The plaintiff still bears the full burden of showing a definite link between the government's decision and a concrete, personal injury. The Eleventh Circuit made this clear in its principal case on procedural-injury standing, Sierra Club. v. Johnson, 436 F.3d 1269 (11th Cir. 2006). The court explained that the plaintiff must show that the alleged procedural violation "caused a concrete injury in fact," id. at 1278—that is, that it caused a definite injury.[3] This is consistent with the Supreme Court cases explaining that a court may not review a regulation issued by an agency until the regulation actually has a concrete effect on the plaintiff. See, e.g. Nat'l Wildlife Fed'n, 497 U.S. at 891 ("[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.").

---

[3]Ouachita Watch League v. Jacobs, 463 F.3d 1163 (11th Cir. 2006), likewise required the plaintiff to establish a definite causal link to a concrete injury. See id. at 1170 ("Ouachita must show that it has suffered an injury in fact that was caused by the Forest Service's actions." (emphasis added)). The court in Ouachita Watch League did not purport to state a rule different from what the court had laid out in Sierra Club. Of course, if it had, then Sierra Club, as the earlier case, would control. See Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir. 2003).

For the reasons explained in the previous section, none of the injuries TracFone has asserted are sufficiently concrete to support standing under either a conventional Article III analysis or a procedural-injury analysis. TracFone's interest in its ability to seek injunctive relief is not judicially cognizable. The supposed threats to TracFone's business and copyright are speculative and would not be traceable to the actions of the defendants. (See supra pp. 3–4.)

TracFone further argues that the potential material harms that it may suffer are "particularized" injuries personal to TracFone, as opposed to "generalized" injuries shared by the public at large. (Pl.'s Mem. of Law at 16–17.) But "particularized" injuries are not necessarily "concrete" injuries. Abstract or speculative harms, even if entirely personal to the plaintiff, do not satisfy the injury-in-fact requirement. See Defenders of Wildlife, 504 U.S. at 560; Whitmore, 495 U.S. at 155. TracFone's injuries—consisting of what "could" "potentially" happen if the exemption were "misconstrued" (Compl. at 2)—are "conjectural" and "hypothetical" and cannot support standing. See Defenders of Wildlife, 504 U.S. at 560. TracFone therefore cannot establish procedural-injury standing.

## II.   TracFone's suit has no valid legal basis.

### A.   The § 1201 rulemaking process is not subject to review under the APA.

The Administrative Procedure Act does not apply to the § 1201 rulemaking process. The Supreme Court explained in Kissinger v. Reporters Committee for the Freedom of the Press, 445 U.S. 136 (1979), that the Librarian of Congress "is not an 'agency'" under the definition employed in the Freedom of Information Act and the Administrative Procedure Act. Id. at 145. This statement was not merely "dictum" in the usual sense; it was an essential premise underlying the Supreme Court's grant of certiorari and its ultimate holding. See id. at 139 (stating a holding premised on the principle that the Librarian is "not an 'agency'" under the

APA). Moreover, even the dicta of the Supreme Court are entitled to great weight; lower courts may not simply ignore them. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 66–67 (1996). The D.C. Circuit has likewise definitively held that the Librarian of Congress is not an "agency" under the APA. Ethnic Employees of the Library of Cong. v. Boorstin, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985); Clark v. Library of Cong., 750 F.2d 89, 102 (D.C. Cir. 1984) (finding that a plaintiff could not take advantage of the APA's waiver of sovereign immunity, 5 U.S.C. § 702, because "the Library of Congress is not an 'agency' as defined under the Administrative Procedure Act."). Meanwhile, TracFone has not identified a single case from any court finding that the Librarian is an "agency" within the meaning of the APA.[4]

The Supreme Court's position is also consistent with the position taken by Congress, which in 1976 amended the Copyright Act to bring actions of the Register of Copyrights—an officer within the Library of Congress—within the scope of the APA. See Pub. L. No. 94-553, § 701(d), 90 Stat. 2541, 2591 (1976) (codified as amended at 17 U.S.C. § 701(e));  H.R. Rep. No. 94-1733, at 81 (1976) (Conf. Rep.), available at 1976 WL 14046 (explaining that the amendment "made the Administrative Procedure Act applicable to the Copyright Office"). Such

---

[4]TracFone cites parts of a law review article suggesting that the § 1201 rulemaking is governed by the APA. (Pl.'s Mem. of Law at 8 n.2 (citing David Nimmer, A Riff on Fair Use in the Digital Millennium Copyright Act, 148 U. Pa. L. Rev. 673, 694, 698 (2000)).) It appears the author of the article was simply unaware that the Librarian is not an "agency" under the APA. Dictum in a law review article can hardly trump the Supreme Court's statement in Kissinger and the evidence that Congress has taken the same view as the Supreme Court (see infra p. 10).

TracFone also argues that Kissinger and Ethnic Employees may be distinguishable, but its argument is based solely on imagined facts that conflict with the actual facts of the two cases. In Kissinger, the Library was holding the private papers at issue not for the use of Congress, but on behalf of "the United States." Kissinger, 445 U.S. at 141. The organization at the center of Ethnic Employees was "an organization of Library employees 'dedicated to promoting non-discriminatory treatment of ethnic and racial minorities at the Library,'" Ethnic Employees, 751 F.2d at 1407—not, as TracFone supposes, an organization of employees exclusively devoted to supporting Congress's legislative activities.

an amendment would have been unnecessary if the Library of Congress was already within the scope of the APA.

The statute subjecting the Register of Copyrights to the APA, 17 U.S.C. § 701(e), does not make the APA applicable in this case, because review under the APA is limited to "final agency action." 5 U.S.C. § 704. It is the Librarian's final approval, not the Register's recommendation, that "mark[s] the 'consummation'" of the rulemaking process and actually establishes an exemption from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (explaining "final agency action" for purposes of the APA); see also 17 U.S.C. § 1201(a)(1)(D) (providing that an exemption takes effect upon the Librarian's publication of the exemption). As the Supreme Court made clear in Dalton v. Specter, 511 U.S. 462 (1994), interim recommendations, even if they play a vital role in the regulatory process, are not "final agency action" subject to review under the APA. See id. at 468–71.

The D.C. Circuit's opinion in National Association of Broadcasters v. Librarian of Congress, 146 F.3d 907 (D.C. Cir. 1998), further supports the view that the APA does not govern this case. The court in NAB examined a similar regulatory structure in which Congress directed the Librarian of Congress to take administrative action based on a recommendation provided by the Register of Copyrights. See id. at 913 (quoting 17 U.S.C. § 802(f) (1994) (amended 2004)). Before Congress established this scheme, the administrative decisions at issue had been made by a tribunal whose decisions were subject to APA review. Id. The petitioners argued that the APA's "arbitrary and capricious" standard of review should still apply to the Librarian's actions under the new scheme, but the court rejected that argument. Id. at 919 ("In light of the Congress's decision to remove from the judicial review provision of the 1993 Act any reference to the APA, we . . . conclude that [the petitioners] err in suggesting that the

11

arbitrary and capricious standard continues to control our subsection 802(g) review.").

> **B.**     **The procedures followed in the rulemaking would satisfy the APA.**

Although the APA does not apply to the § 1201 rulemaking, the Librarian and the Register of Copyrights followed standard regulatory procedures in the rulemaking. As such, the rulemaking proceedings at issue would have satisfied the demands of the APA even if it applied.

The APA does not require an agency to publish advance notice of either the precise "terms" or the general "substance" of a proposed rule. Rather, the APA's notice requirements are fully satisfied when an agency describes "the subjects and issues involved," 5 U.S.C. § 553(b)(3), and "affords interested parties a reasonable opportunity to participate in the rulemaking process," Lloyd Noland Hosp. & Clinic v. Heckler, 762 F.2d 1561, 1565 (1985) (quoting Forester v. Consumer Prod. Safety Comm'n, 559 F.2d 774, 787 (D.C. Cir. 1977)). The Copyright Office's Federal Register notices of October 3, 2005, and February 23, 2006, would have alerted any reasonably diligent "interested part[y]"—in this case, a party that allegedly enjoys protection under the § 1201 anticircumvention provision and has been asserting § 1201 in litigation—that the Copyright Office was receiving proposals for exemptions that could affect the continued application of § 1201. The Federal Register notices further indicated that the text of the proposals was available on the Copyright Office Web site, and they spelled out procedures and deadlines for participating in the rulemaking process by submitting comments and hearing testimony. The Federal Register notices therefore fully satisfied the requirements of § 553.

TracFone contends that a notice of proposed rulemaking must explain "the direction that the agency contemplates going in the rulemaking proceeding." (Pl.'s Mem. of Law at 2). This requirement appears nowhere in the statute. Moreover, such a requirement would be at odds with the purpose of notice-and-comment rulemaking. Requiring an agency to form and state an

opinion in the early phases of decisionmaking would effectively penalize agencies that remained open-minded before soliciting public comment.

The only authority TracFone cites for its interpretation of § 553 is a 22-year-old district court case, United States Church Board for World Ministries v. SEC, 617 F. Supp. 837 (D.D.C. 1985). Even that case does not support TracFone's position. In that case, the SEC simply published a "two-sentence request for comments on 'appropriate levels'" for threshold percentages for reintroduction of shareholder proposals. Id. at 839. There was no indication of the factors or criteria the SEC would examine in setting the threshold percentages. In this case, however, the Federal Register notice spelled out the statutory factors that would be used to evaluate exemptions and explained precisely how it would apply those factors. Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 70 Fed. Reg. 57,526, 57,527–30 (Oct. 3, 2005).[5]

The Register's refusal to consider TracFone's late-submitted comments also would not violate the APA. Courts have consistently upheld agencies' enforcement of announced deadlines for comments. See Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 543 (D.C. Cir. 1995); Bd. of Regents of the Univ. of Wash. v. EPA, 86 F.3d 1214, 1222 (D.C. Cir. 1996); Reytblatt v. U.S. Nuclear Regulatory Comm'n, 105 F.3d 715, 723 (D.C. Cir. 1997). An orderly, expeditious process is particularly important in the context of the § 1201 rulemaking, which

---

[5]In an earlier filing, TracFone cited Lloyd Noland Hospital and Clinic v. Heckler, 762 F.2d 1561 (11th Cir. 1985). In Lloyd Noland, the Eleventh Circuit stated in dictum that "[t]he purpose of notice under the APA is to disclose the thinking of the agency and the data relied on." Id. at 1565 (citing Home Box Office, Inc. v. FCC, 567 F.2d 9, 35 (D.C. Cir. 1977)). But this sentence only describes in vague terms why the APA requires notice. The court's description of what notice the APA requires appears in the next sentence of the opinion: "Notice is adequate if 'it affords interested parties a reasonable opportunity to participate in the rulemaking process.'" Id. (quoting Forester v. Consumer Prod. Safety Comm'n, 559 F.2d 774, 787 (D.C. Cir. 1977)).

requires the Librarian of Congress to promulgate exemptions on a three-year cycle. 17 U.S.C.

§ 1201(a)(1)(C) (see also Administrative R. at 618–19). The Register of Copyrights in this case,

consistent with her past practice in the § 1201 rulemaking and in light of the statutory timetable,

followed a sequence of receiving comments, receiving reply comments, holding hearings, and

then soliciting additional information from hearing witnesses as appropriate. A different agency

in a different context might have chosen to allow submissions of any kind to be made at any time

during the proceedings. But that does not mean it was "arbitrary and capricious" for the Register

to follow a more orderly process as prescribed by Congress. The Supreme Court has emphasized

that district courts may not overturn agency action simply because different processes might

have produced a better result. See Vt. Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 524

(1978) ("Even apart from the Administrative Procedure Act, [the Supreme Court] has for more

than four decades emphasized that the formulation of procedures was basically to be left within

the discretion of the agencies to which Congress had confided the responsibility for substantive

judgments."); id. at 546 ("Congress intended that the discretion of the agencies and not that of

the courts be exercised in determining when extra procedural devices should be employed. . . .

[I]f courts continually review agency proceedings to determine whether the agency employed

procedures which were, in the court's opinion, perfectly tailored to reach what the court

perceives to be the 'best' or 'correct' result, judicial review would be totally unpredictable"); see

also Fla. Manufactured Hous. Ass'n v. Cisneros, 53 F.2d 1565, 1572–73 (11th Cir. 1995). The

fact that the Copyright Office received 14 timely submissions from parties other than the

proponents of the exemption, including a group of parties opposing the exemption

(Administrative R. at 22–89, 93–109, 614 & nn. 123, 124), shows that the process was adequate

to allow broad input from interested parties, which is all that the APA requires.

14

TracFone also argues that because the Copyright Office accepted additional information from two witnesses who testified at the hearing, it was bound to also accept TracFone's late-filed submission. TracFone relies on Westar Energy, Inc. v. FERC, 473 F.3d 1239 (D.C. Cir. 2007), and Green Country Mobilephone, Inc. v. FCC, 765 F.2d 235 (D.C. Cir. 1985). Each of these cases turned on a conclusion that the agency could not identify any meaningful distinction between parties who had been granted leave to submit late filings and parties who had been denied leave. See Westar Energy, 473 F.3d at 1243; Green Country Mobilephone, 765 F.2d at 238. In this case, TracFone was not in the same position as the two hearing witnesses. The two hearing witnesses had submitted written comments in compliance with the announced process, and they had testified at the hearing, so their positions were already known to the agency and other parties. TracFone had not participated in the process at all, so other parties would not have had an adequate opportunity to evaluate and respond to TracFone's arguments.[6] (See Administrative R. at 618–19.) This distinction was well within the discretion the APA allows. Even if the APA applied, it would provide no basis for overturning the Librarian's decision.

### C.   Even if TracFone had presented a valid claim under the APA, the appropriate remedy would be to remand the matter to the agency.

TracFone requests relief in the form of an advisory opinion or an injunction forcing the Librarian to rescind the exemption.[7] However, if the APA applied, and TracFone were entitled to relief under the APA, the proper remedy would be to remand the matter to the Librarian to permit the Librarian and the Register to reopen the proceedings. See Preserve Endangered Areas

---

[6]The Register of Copyrights also rejected an attempt by the proponents of the exemption to file an out-of-time submission responding to TracFone's submission. See Defs.' Resp. to Pl.'s Statement of Material Facts in Supp. of Its Mot. for Summ. J. ¶ 17.

[7]As explained above, the Court lacks authority to grant these remedies. (See supra p. 5.)

of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1246 (11th Cir. 1996) (noting that when an agency acts improperly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation" (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985))).

In addition, if the Court were to remand the matter to the Librarian under the APA, the Court should leave the exemption in effect while the Librarian and the Register reopen the proceedings. "'[T]he decision whether to vacate [a rule] depends on "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."'" Sugar Cane Growers Coop. of Fla. v. Veneman, 289 F.3d 89, 98 (D.C. Cir. 2002) (quoting Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). The Librarian's decision was based on a thorough review of evidence collected through an extensive public comment process; it remains possible that new proceedings would reach the same result. Interim vacation of the exemption would cause disruption to consumers—many of whom are not TracFone customers[8]—employing the exemption for entirely lawful purposes. Thus, if the Court were to remand the exemption to the Librarian, it should do so without vacating the rule.

**D.    TracFone has no claim under the Due Process Clause of the Constitution.**

The rulemaking process also did not violate the Due Process Clause. As the Supreme Court has made clear, when a government body promulgates generally applicable rules, due process does not require the government to provide advance notice or an opportunity for comment, even to parties who will be directly affected by the policy. See, e.g., Bi-Metallic Inv.

---

[8]Twelve individuals submitted reply comments in support of the exemption. Not one stated that he or she was a TracFone customer. (Administrative R. at 32–34, 93–109.)

<u>Co. v. State Bd. of Equalization</u>, 239 U.S. 441, 445 (1915); <u>Minn. State Bd. for Comm'ty Colls.</u> <u>v. Knight</u>, 465 U.S. 271, 284 (1984).

Despite this Supreme Court precedent, TracFone insists that the Fifth Amendment demands advance notice of rulemaking. TracFone cites no authority supporting this proposition. TracFone cites <u>Mobil Exploration and Producing North America, Inc. v. FERC</u>, 881 F.2d 193 (5th Cir. 1989), but that case dealt only with the statutory due process demands of the APA, not with the due process demands of the Constitution. <u>See</u> <u>id.</u> at 199 (citing 5 U.S.C. § 553).[9]

TracFone also seeks support from <u>North Alabama Express, Inc. v. United States</u>, 585 F.2d 783 (5th Cir. 1978), but that case is inapplicable. <u>North Alabama Express</u> concerned an agency order granting increased operating authority to a particular company—an adjudicative proceeding, not a rulemaking proceeding. <u>Id.</u> at 784. The Supreme Court and the Eleventh Circuit have made clear that the Fifth Amendment imposes greater procedural requirements in adjudicative proceedings than in rulemaking proceedings. <u>See</u> <u>75 Acres, LLC v. Miami-Dade County</u>, 338 F.3d 1288, 1294 (11th Cir. 2003) (explaining "the important distinction between legislative action and adjudicative action in evaluating a procedural due process claim").

**E.      TracFone has no valid claim based on the separation of powers.**

TracFone's claim under the separation of powers also has no legal basis.

TracFone agrees that for purposes of constitutional analysis, Congress includes only the House and the Senate and does not include other actors that assist Congress. (<u>See</u> Pl.'s Mem. of Law at 7–8 (citing U.S. Const. art. I, § 1)). TracFone also agrees that the § 1201 rulemaking is an administrative function that can be vested in an expert agency. (<u>See</u> Pl.'s Mem. of Law at 13).

---

[9] The headnotes to the decision in the Federal Reporter mistakenly reference the Constitution, but these headnotes are not part of the decision. <u>See</u> <u>United States v. Little Rock Sewer Cmte.</u>, 460 F. Supp. 6, 8 n.2 (E.D. Ark. 1978).

The § 1201 rulemaking scheme is wholly unlike the schemes that courts have held invalid based on separation of powers in the past. Those schemes provided for the exercise of administrative functions by Congress itself—that is, the House and the Senate—either on its own, through its members, or through officers over whom Congress exercised direct appointment or removal authority. See, e.g., Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 276–77 (1991) (invalidating a scheme that created a review board partly composed of members of Congress); Bowsher v. Synar, 478 U.S. 714, 733–34 (1986) (invalidating investment of executive powers in an officer removable by Congress). None of these problems is present in this case. The Librarian of Congress is appointed by the President with the advice and consent of the Senate, 2 U.S.C. § 136, and the Register is appointed by the Librarian, 17 U.S.C. § 701(a). See Eltra Corp. v. Ringer, 579 F.2d 294, 299–301 (4th Cir. 1978) (rejecting a separation of powers challenge against Copyright Office rulemaking). And as TracFone agrees, (see Pl.'s Mem. of Law at 8–9), the House, the Senate, and its members have no role in the § 1201 rulemaking process. 17 U.S.C. § 1201.

As the Supreme Court held in INS v. Chadha, 462 U.S. 919 (1983), the Constitution also forbids Congress from exercising rulemaking functions by means other than the ordinary legislative process. Id. at 951. However, this principle does not prevent Congress from vesting rulemaking authority in other government authorities outside its direct control, such as the Librarian and the Register. See Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 472–75 (2001).

## III. TracFone's affidavit does not establish the absence of genuine issues of fact.

Because there is no valid legal basis for TracFone's standing to sue or for its claims, and because the administrative record provides adequate support for the defendants' actions, the defendants are entitled to dismissal or summary judgment regardless of how disputed issues of

18

fact might be resolved later in the proceedings.[10] Even if the Court were to reject the defendants' legal arguments, however, TracFone still would not be entitled to summary judgment.

TracFone's statement of facts and supporting affidavit contain statements about matters outside the defendants' knowledge, such as the nature of TracFone's business and the risks it faces, the third-party activities TracFone opposes, and TracFone's knowledge of the rulemaking proceedings. (See Decl. of F.J. Pollak in Opp. to Defs.' Mot. to Dismiss or Alternatively for Summ. J. ¶¶ 3–23, 25–31; Pl.'s Statement of Material Facts in Supp. of Its Mot. for Summ. J. ¶¶ 1–2, 6.) These matters could be material to TracFone's standing and its legal claims. (See 5 U.S.C. § 553(b) (providing that actual notice can satisfy the APA's notice requirement)).

To obtain summary judgment, TracFone must show that the evidence it has presented does not merely permit judgment in its favor, but compels judgment in its favor even if viewed in the light most favorable to the defendants. TracFone, as the plaintiff, bears the burden of persuasion both on the issue of standing and on the merits. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (explaining that a plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof"). TracFone's supporting affidavit would not compel a finding in TracFone's favor on either the issue of standing or the issue of whether TracFone had actual notice of the rulemaking proceedings. Consequently, TracFone has not established the absence of a genuine issue of fact, and the burden to produce evidence has not shifted to the defendants. See Hunt v. Cromartie, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.");

---

[10]Disputes about how a court should interpret an administrative record do not preclude summary judgment. Whether an agency's interpretation of the record was in accord with law is a purely legal issue. See Pollgreen v. Morris, 770 F.2d 1536, 1544–45 (11th Cir. 1985).

United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact . . . ."); Fed. R. Civ. P. 56(e) advisory committee's note ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." (emphasis added)). TracFone's motion for summary judgment therefore should be denied.

Also, because TracFone filed its motion for summary judgment at such an early stage, the defendants have not had an opportunity to investigate TracFone's assertions and evidence through discovery. At the very least, the Court should deny TracFone's summary judgment motion to allow the defendants such an opportunity. See Fed. R. Civ. P. 56(f).

## CONCLUSION

For the reasons above, Plaintiff's Motion for Summary Judgment should be denied.

Dated: April 23, 2007       Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

R. ALEXANDER ACOSTA
United States Attorney

THEODORE C. HIRT
Assistant Branch Director

/s/ JAMES C. LUH                                    
JAMES C. LUH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


/s/ <u>JAMES C. LUH                        </u>
JAMES C. LUH

<u>**SERVICE LIST**</u>

Case No. 06-cv-22942-GRAHAM

Steven J. Brodie
Carlton Fields
4000 International Place
100 SE 2nd St
Miami FL 33131-2114
Tel: (305) 530-0050
Fax: (305) 530-0055
E-mail: sbrodie@carltonfields.com

John A. Camp
Carlton Fields
4000 International Place
100 SE 2nd St
Miami FL 33131-2114
Tel: (305) 530-0050
Fax: (305) 530-0055
E-mail: jcamp@carltonfields.com

James B. Baldinger
Carlton Fields
222 Lakeview Ave Ste 1400
West Palm Beach FL 33401-6149
Tel: (561) 659-7070
Fax: (561) 659-7368
E-mail: jbaldinger@carltonfields.com

Sylvia H. Walbolt
Carlton Fields
4221 W Boy Scout Blvd Ste 1000
Tampa FL 33607
Tel: (813) 223-7000
Fax: (813) 229-4133
E-mail: swalbolt@carltonfields.com
Attorneys for Plaintiff TracFone Wireless,
Inc.

James C. Luh
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorney for Defendants James H.
Billington and Marybeth Peters